JOHN F. COMEY, Respondent, *v.* UNITED SURETY COMPANY, Appellant.

Surety bonds — action upon bond given by contractor for faithful performance of work — when substitution of new contract for original contract did not extinguish right of action — Statute of Limitations — when foreign corporation not precluded from pleading such statute.

1. Defendant gave a bond conditioned for the faithful performance of a contract by another. The bond contained a provision for liquidated damages for any delay at a fixed rate per day, and the

provision that action against the surety must be begun "within six months after the completion of the work specified in said contract." The contractor refused to go on with the work, and thereafter, with the approval of the defendant, a new contract was made which, among other things, provided that "this agreement shall not be deemed to revive said original contract, or as a waiver of any rights thereunder, but all the provisions thereof shall apply to this agreement except as herein modified." The defendant indorsed on this agreement a statement of its approval "without prejudice to any rights of the respective parties" under the existing bond. More than six months after the completion of the work, this action was brought. *Held*, that the effect of the new contract was not to extinguish the right of action against defendant.

. 2. Although the defendant is a foreign corporation, it is not precluded from taking advantage of any defense of limitation, whether statutory or contractual. It is here by force of a license sought for and granted under the authority of our law (Ins. Law, §§ 9, 30; Cons. Laws, ch. 28), and in its transaction of business in this state it is to be dealt with *pro hac vice* as a domestic corporation and may avail itself of the Statute of Limitations when it is applicable.

3. The defense that the action was not begun in time is not applicable. The plaintiff's grievance is a total abandonment of and *refusal* to complete the work. Hence, his cause of action was not postponed until completion, did not depend upon completion and is not affected by a limitation which postulates completion.

*Comey* v. *United Surety Co.*, 160 App. Div. 698, affirmed.

(Argued January 26, 1916; decided February 22, 1916.)

Appeal from a judgment entered March 5, 1914, upon an order of the Appellate Division of the Supreme Court in the first judicial department reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and directing judgment in favor of plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edwin Blumenstiel* and *Milton M. Blumenthal* for appellant. The plaintiff's cause of action is barred by the contractual limitation contained in the bond. (Wood

on Lim. [2d ed.] § 42.) The plaintiff cannot avail himself of the benefit of section 401 of the Code because the defendant is not one of the persons or corporations referred to therein. (*Olcott* v. *Tioga*, 20 N. Y. 210; *Boardman* v. *L. S. & M. S. R. R. Co.*, 84 N. Y. 157; *Roberson* v. *C. Ry. Co.*, 76 Hun, 444; *McClune* v. *Supreme Lodge*, 41 App. Div. 139.) Section 401 of the Code does not apply to contractual limitations. (Code Civ. Pro. § 414-1; *O'Neil* v. *F. F. Ins. Co.*, 159 App. Div. 313.)

*Hugh A. Bayne* and *Edward E. Sprague* for respondent. The limitation clause in the bond could not apply to a contract which was abandoned by the principal. The purpose of that clause was to limit the time during which the insured could resort to the bond for compensation for defective or inferior workmanship. It was, moreover, expressly waived by the agreement of May 28, 1909, and the defendant is estopped from setting it up. (*Gibson Electric Co.* v. *L., L. & G. Ins. Co.*, 159 N. Y. 418; *Arthur* v. *Homestead Fire Ins. Co.*, 78 N. Y. 462; *McArdle* v. *German A. Ins. Co.*, 98 App. Div. 594; *Walsh* v. *Metr. L. Ins. Co.*, 105 App. Div. 186.) No limitation could operate in defendant's favor, for defendant was absent from the state during the period in question. (*Boardman* v. *Ry. Co.*, 84 N. Y. 157; *Hamilton* v. *Royal Ins. Co.*, 156 N. Y. 327; *Hayden* v. *Pierce*, 144 N. Y. 512; *McClure* v. *Supreme Lodge*, 41 App. Div. 131.)

CARDOZO, J. In August, 1908, the plaintiff made a contract with the Pucci Contracting Company for the excavation by that company of a plot of ground in the city of New York. The work was to be done by April 15, 1909, and the price to be paid for it was $20,000. For any delay after May 1, 1909, the damages were liquidated at $10 a day. The contractor gave a bond in the sum of $7,500 conditioned for the faithful performance of the

contract. The bond was signed by the defendant as surety. It contains a provision that actions against the surety must be begun "within six months after the completion of the work specified in said contract." The work proceeded until February 1, 1909. The contractor then abandoned the job, and on March 1, 1909, expressly refused to go on. The plaintiff at once made demand upon the defendant. He gave notice that the contractor was in default, and that the defendant would be held responsible for the damages. He also gave notice that the same contractor was about to submit an offer of the terms on which the work would be resumed and carried to completion. On May 28, 1909, with the approval of the defendant, a new contract was made. The contractor undertook to finish the work of excavation for $17,564.40, which in view of previous part payments was an advance of about $3,300 over the original price. Provision was made that "this agreement shall not be deemed to revive said original contract of August 19, 1908, or as a waiver of any rights thereunder, but all the provisions thereof shall apply to this agreement except as herein modified." The defendant indorsed on this agreement a statement of its approval "without prejudice to any rights of the respective parties" under the existing bond. The work was then continued; it was completed in February, 1910; and nine months later, in November, 1910, this action was begun. By the judgment of the Appellate Division, the defendant has been held liable on its bond for the increased cost of completion and for the damages resulting from delay.

We think there is nothing in the point that the effect of the new contract was to extinguish the right of action against the surety. The contract itself supplies the sufficient answer to that claim. It says in so many words that the old contract is not to be deemed revived, and that no rights that have accrued under it are waived. The cause of action against the defendant was thus

plainly preserved. The plaintiff had already given notice that the increased cost of completion would be charged against the surety. The only effect of the new contract was to measure the increased cost by payments to the same contractor rather than by payments to another. To hold otherwise would be to say that the plaintiff gave away his right of action against the surety, and assumed the extra cost himself. There is no suggestion of such a purpose. The cause of action had already accrued, and it has been neither satisfied nor released (*McKnight* v. *Dunlop*, 5 N. Y. 537, 544).

The question remains whether the action was begun in time. The bond, we have seen, requires that actions against the surety must be begun "within six months after the completion of the work specified in said contract." This action was not begun till nine months afterwards. The defendant insists that the cause of action has been barred by this contractual limitation. To this the plaintiff makes two answers: *first*, that the defendant, as a foreign corporation, is precluded from taking advantage of any defense of limitation, whether statutory or contractual; and *second*, that the contractual limitation, if the defendant is in a position to take advantage of it, does not fit the facts.

The law of New York has long been that the time during which a person against whom a cause of action has accrued, is absent from the state, is not to be taken as any part of the time limited for the commencement of an action (2 R. S. 297, § 27; Code of Procedure, § 100; Code of Civ. Pro. § 401); and this court is committed to the view that there is no distinction in that respect between a limitation prescribed by statute and one imposed by contract (*Hamilton* v. *Royal Ins. Co.*, 156 N. Y. 327). The question came up in *Olcott* v. *Tioga R. R. Co.* (20 N. Y. 210), decided in 1859, whether corporations are "persons" within the meaning of that rule. The argument was that such corporations, if per-

sons, are always absent from this state. They dwell, it was said, only in the state of their creation. The argument prevailed, and the decision was that the statute reaches all persons, natural or juristic, and hence that a foreign corporation sued in this state can never avail itself of the Statute of Limitations. The ruling did not escape criticism (*Tioga R. R.* v. *Blossburg & Corning R. R.*, 20 Wall. 137, 143, 152); but it was adhered to as settled law. In *Rathbun* v. *No. C. R. Co.* (50 N. Y. 656), decided in 1872, and in *Boardman* v. *L. S. & M. S. R. Co.* (84 N. Y. 157), decided in 1881, we applied it to railroad corporations, which, though organized in other states, operated their lines in this state and were permanently represented here by officers and agents. But the position of the defendant corporations in all those cases differs from the position of the defendant now before us. They had their property here; they had their representatives here; they were exercising their corporate franchises here; but they were not here by force of a license sought for and granted under the authority of our local law. This defendant is a foreign corporation, but its franchise to act as a corporation does not empower it to transact the business of insurance in this state. It must subject itself to our laws, it must obtain the license of our government, or its business becomes illegal (Insurance Law, § 9; L. 1909, ch. 33; Consol. Laws, ch. 28). It has, therefore, filed with the superintendent of insurance " a written appointment of the superintendent to be the true and lawful attorney of such corporation in and for this state, upon whom all lawful process in any action or proceeding against the corporation may be served with the same effect as if it was a domestic corporation " (Insurance Law, § 30), and has received from the superintendent a certificate that it is authorized to transact an insurance business in this state (Insurance Law, § 9). It is here because our government has said that it may come here,

18

and has defined the terms and conditions that entitle it to stay here.

We think that a foreign corporation thus licensed under our own laws may not with reason be held to be absent from our state. It owes to the law of its creation its franchise to be a corporation, but it owes to the law of this state the privilege of doing business within our borders. In exercising that privilege it may be dealt with as if it were in truth a domestic corporation. This view of its position has support in recent decisions. In *Morgan* v. *Mutual Benefit Life Ins. Co.* (189 N. Y. 447, 454) we held that for many purposes a foreign insurance company, transacting business here, must be "treated as a domestic insurance company and as domiciled in this state." We pointed out that its presence here is "not temporary, but continuous," and under the authority of our laws. More recently, in *Lockwood* v. *U. S. Steel Corporation* (209 N. Y. 375, 385) we said that foreign insurance companies must be "regarded as domiciled for certain purposes in the foreign state where they are permitted to do business." (See also *New England Mut. Life Ins. Co.* v. *Woodworth,* 111 U. S. 138.) The principle of these decisions is applicable here. The defendant is not here occasionally and according to the shifting pleasure of its managers. It is here with a representative for the service of process under an appointment made permanent by the will of the law. In its transaction of business in New York, it is to be dealt with, *pro hac vice,* as a domestic corporation.

We think there is nothing in the language of section 401 of the Code of Civil Procedure at war with this conclusion. The first sentence of that section has been carried forward from section 100 of the former Code of Procedure: "If, when the cause of action accrues against a person, he is without the state, the action may be commenced within the time limited therefor, after his return into the state." In 1888 the amendment was added:

"But this section does not apply, while a designation, made as prescribed in section 430, or in subdivision second of section 432, of this act, remains in force." The designation prescribed by section 430 is a designation made by a resident of the state who is of full age, and must be filed with the clerk of the county where the maker of the designation resides. That provision is inapplicable to corporations. The designation prescribed by subdivision 2 of section 432 is one made by a foreign corporation under section 16 of the General Corporation Law, and must be filed with the secretary of state. The defendant has not complied with that provision. It could not, for section 16 of the General Corporation Law does not apply to insurance or other moneyed corporations (Gen. Corp. Law [Cons. Laws, ch. 23], § 15). The representative of insurance companies for the service of process is the superintendent of insurance, and the appointment must be filed with him. It is true, therefore, that the defendant has not brought itself within the exceptions enumerated in section 401 of the Code. But the fact that it is not within the exceptions does not mean that it is within the rule. To bring it within the rule, it must appear to have been absent from the state. Unless it has been absent, it does not need the benefit of the exceptions.

The argument is made, however, that the exceptions suggest a construction by the legislature of the meaning of absence from the state. It is said that the exception of business corporations, licensed under section 16 of the General Corporation Law, was needless if the legislature did not believe that they would otherwise be within the rule. What is true of business corporations must also, it is said, be true of insurance corporations. That argument overlooks the fact that when section 401 was amended in 1888, subdivision 2 of section 432 did not read as it does to-day. It received its present form in 1909 (L. 1909, ch. 65). In 1888, it referred to designations made by any foreign corporation, whether licensed to do

business here or not. It was not confined to designations by licensed corporations. To exclude from section 401 corporations complying with subdivision 2 of section 432, did not, therefore, import a belief that corporations licensed under our laws were absent from the state. The exceptions established in 1888 must, of course, vary automatically with the changes of section 432; but what concerns us now is the light which the exceptions cast upon the body of the rule, and for that purpose we must consider them as of the time of their adoption. Thus viewed, they suggest nothing at variance with our conclusion. Indeed, even if section 432 had read in 1888 precisely as it does to-day, it would be hard to believe that the legislature had in mind an arbitrary discrimination between business corporations on the one hand, and moneyed corporations on the other. It would be easier to believe that an exception, in reality needless, had been stated from excess of caution.

We hold, therefore, that the defendant has the right, like a domestic corporation, to take advantage of the defense that the action was not begun in time. Whether it *was* begun in time, remains to be considered. The bond provides that any action under it "must be instituted within six months after the completion of the work specified in said contract." To determine whether that limitation is applicable here, we must keep in mind the precise nature of the contractor's breach and of the plaintiff's cause of action. The cause of action accrued long before the work was completed. It accrued in March, 1909, when the contractor refused to go on. It was a cause of action to recover damages for the abandonment of the contract. The plaintiff was under no duty to complete the work. If he had not completed it, he would still have been entitled to his damages (*Kidd* v. *McCormick*, 83 N. Y. 391, 397). The fact that he did complete it makes the proof of his damages more certain. It supplies evidence of his loss which might otherwise

have depended upon the estimates of experts. It has no other importance. It is not an element of the cause of action. What the plaintiff did in finishing the work was not done as the contractor's agent (*Murphy* v. *Buckman*, 66 N. Y. 297); he did not elect to keep the contract alive; he treated it as repudiated, and claimed his damages for the breach.

In this situation the contractual limitation must be held to be inapplicable. A cause of action to recover damages for *refusal* to complete the work cannot be subject to a limitation which assumes completion of the work. That limitation applies when the work has been done *under* the contract. It applies when the contract has been kept alive, and after the work has been done, the claim is made, for illustration, that it has been done defectively. In those and like cases it is only after the work has been done that a cause of action arises, for only then can it be known whether the contractor is in default. But here the plaintiff's grievance is a total abandonment. His cause of action was not postponed until completion, did not depend upon completion, and ought not to be affected by a limitation which postulates completion. The language of the bond is the defendant's; the general law of limitations is not to be readily displaced; and words of doubtful meaning must be construed in favor of the plaintiff (*Am. Surety Co.* v. *Pauly*, 170 U. S. 133, 145).

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, HOGAN and POUND, JJ., concur.

Judgment affirmed.