**City of Des Plaines, Appellant, v. B—W Construction Company and American Surety Company of New York, Appellees.**

**Gen. No. 42,067.**

Heard in the third division of this court for the first district at the February term, 1942. Opinion filed May 27, 1942.

ROSEN, FRANCIS & CLEVELAND, of Chicago, for appellant; RALPH ROSEN and JAMES B. O'SHAUGHNESSY, both of Chicago, of counsel.

Sonnenschein, Berkson, Lautmann, Levinson & Morse, for certain appellee; Herbert M. Lautmann and Jack I. Levy, both of Chicago, of counsel.

Levinson, Becker, Peebles & Swiren, of Chicago, for certain other appellee; Don M. Peebles and Herbert Portes, both of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

In a complaint filed in the circuit court of Cook county on October 18, 1935, the City of Des Plaines, a municipal corporation, sought a judgment in the sum of $17,326.79 for damages sustained because of the alleged failure of the B—W Construction Company, a corporation (hereinafter called the "A" contractor) to carry out its agreement for the construction of a portion of a softening plant, reservoir and pumping station, the performance of which was guaranteed by the American Surety Company of New York (hereinafter called the "Surety"). Issue was joined. At the close of plaintiff's case, the court directed a verdict for the defendants and entered judgment accordingly, to reverse which this appeal is prosecuted.

The parties are in agreement that the question of law presented upon a motion to direct a verdict is whether when all of the evidence is considered, together with all reasonable inferences drawn from it in its most favorable aspects to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case. (*Foreman-State Trust & Savings Bank v. Demeter*, 347 Ill. 72.) Plaintiff insists that it proved all of the elements to make out a *prima facie* case, and that the court was not warranted in directing a verdict. Defendants, on the other hand, maintain that plaintiff failed to prove an essential element of its cause of action. To determine this point, we have carefully

read the transcript of the testimony and the exhibits. In 1935, the municipality, a suburb located northwest of Chicago, undertook with the aid of federal funds, the construction of a water softening plant, reservoirs and other structures necessary for the operation and maintenance of a public water works system. The construction work and installation of the necessary machinery was to be done by six different contractors and agreements were entered into between the city and each of the contractors. In this case only two contractors need be considered. The "A" contractor was the successful bidder for section "A" of the project, which included the principal construction of the plant and reservoirs, including necessary excavation. The "B" contract was awarded to the Economy Heating and Plumbing Company, which agreed to install the plumbing and to construct a toilet sewer. Each contract was executed separately. The contracts included, in addition to the agreement, plans and specifications, construction regulations issued by the Federal Government and general conditions of the contract in a form prepared and approved by the American Institute of Architects. Each set of specifications included details of the work to be done by all of the contractors. The agreement with the "A" contractor was entered into on October 18, 1935. At that time the "B" contract had not been executed. On November 6, 1935, the "A" contractor commenced excavating on the site of the project. At that time the "B" contract had not been approved and it was not officially approved until the latter part of November 1935. The specifications for the work alloted to the "A" contractor provided that "the toilet sewer shall be installed by contractor "B" as the first construction and used to drain the excavation." Defendants maintain that this language required the installation of a sewer which would actually drain the excavation as a condition precedent to the obligation of "A" con-

tractor under its agreement with plaintiff. We are of the opinion that the contract contemplated that before the "A" contractor could be required to perform its part of the work, plaintiff would cause the "B" contractor to install a toilet sewer which could be used by the "A" contractor to drain the excavation. The specifications required the "A" contractor to excavate an area approximately 18,000 square feet to a depth varying between 4 and 4½ feet. During the month of November the "A" contractor continued to work and excavate on the site. It completed the excavation about December 5, 1935, and removed its excavating equipment. It then caused reinforcing steel and lumber to be delivered to the site. Thereafter, it had a superintendent on the job, who supervised the building of an office and staked out the job. On February 26, 1936, the "A" contractor notified plaintiff that it was electing to terminate the contract. Plaintiff thereafter called upon this contractor to resume work and notified the Surety that it would hold it to its bond in case any loss resulted from the failure of the contractor to proceed with the work. On May 14, 1936, neither the Surety nor the contractor having recommenced work, another contractor, R. C. Wieboldt Company, started the completion of the project originally undertaken by contractor "A." The work to be done by Wieboldt was identical with that contracted by contractor "A."

Lancelot F. Wysockey, called as a witness by plaintiff, testified that he was a construction engineer; that he represented the Public Works Administration in connection with the construction of the waterworks project for the City of Des Plaines; that he was assigned to the project about November 1, 1935, and was there until February 18, 1936; that it was his duty to report to the State Engineer Inspector the progress and activities of construction and to see that the project was constructed according to the plans and

specifications; that he had an office on the project; that the "B" contractor came to the site about December 21, 1935, and started excavating a drain line from the main excavation, that is where the site of the plant was, to a connected sewer along the east side of the property, and worked on that until January 18, 1936, when it had completed that portion of the contract. On cross-examination, this witness testified that the "B" contractor came to the site the latter part of November 1935, and actually commenced work about December 21; that this contractor started excavating the north side of the plant and continued until the holidays and then put in several days between Christmas and New Year's, started again the first part of January 1936, and continued until about the middle of January 1936, "When he completed that portion of it." When asked what he meant by "portion," the witness stated that the "B" contractor had a contract to install pipe inside as well as outside of the building, that he started the outside work first and came on to the site where the building was going to be erected, and that the balance of the work on the inside could not be completed until the other contractor had completed part of his work. Counsel called the witness's attention to the provision that "the toilet sewers shall be installed by contractor 'B' as the first construction and used to drain the excavation" and asked, "Now when you say they completed their work on January 18, 1936, had they completed the toilet sewers to drain the excavation that this specification called for?" Witness answered, "Yes, that is a waste line; I made the statement that they had installed a waste line and drain line, and that is a toilet sewer." In answer to the question as to where it was, he answered, "It was on the east side, on the north side of the plant, and it came in from the north, in along the east side and made a connection across into the plant and also another connection over

to the old present pumping station. In other words, it came over in sort of an H-shape. To explain it more in detail to you, one line went along the north side of the plant; the other section from the old plant or the pumphouse into the new, and in the center between the two went another lateral into the waste line, on the outside of the building.'' Witness further testified that the specifications directed contractor "B" to first install the waste line so that contractor "A" could use it to drain any water out of the excavataion made by contractor "A." Asked as to whether there would be a point of contact between the two excavations, the witness answered, "Yes." Asked, "Where was that point of that pipe after the fill-in, with respect to the 'A' excavation?", he answered, "Well, that pipe would go right up to the wall line where the new building was going in, or within a couple of feet of it.'' In answer to the question, "Well, now did you see that pipe in that position, did you ever see it in that position?", he answered, "Yes, that pipe was completed.'' Asked, "You are testifying now from independent recollection that there was such a pipe at or near the point where the excavation, the 'A' excavation, ended?", he answered, "That's right.'' Asked as to which side of the main excavation the pipe was on, witness answered. "Well, the pipe came in along, as I explained before, it came in on the north side of the building, and then there was a lateral line that led across on the east side of the building.'' Witness then explained that there was a lateral line that led across on the east side of the building, entered the new building and also the old pumphouse. On cross-examination, he was asked, "Are you positive now that that ditch was up to and in contact with 'A'?", and he answered, "To the best of my knowledge, yes.'' Defendants call attention to the testimony of Mr. Meyer, attorney for plaintiff, from which they argue that the condition

precedent was not performed. Through cross-examining Mr. Meyer, defendants placed in the record a letter written by the ''A'' contractor to plaintiff in which that contractor set out its contentions. However, in passing on the proposition as to whether the court was right in directing a verdict for the defendants, we should view the evidence in the light most favorable to the plaintiff. While we agree with the contention of defendants that the installation of the toilet sewer was a condition precedent, we do not agree that the burden was on plaintiff to show that the sewer actually drained the excavation. All that the contract required was that the sewer could be used to drain the excavation. There was no obligation on the ''A'' contractor to use the sewer for the purpose of draining the excavation. This sewer was to operate in connection with the toilet. Mr. Wysockey, the engineer, testified that the ''B'' contract was completed on January 18, 1936. He emphasized that ''when I say they had completed their work on January 18, 1936, I mean they had completed the toilet sewer to drain the excavation that this specification called for.'' The contract required that plaintiff cause the ''B'' contractor to install the toilet sewer in accordance with the plans and specifications as the first construction ''and used to drain the excavation.'' We construe this language to mean that the sewer should be installed by the ''B'' contractor as the first construction so that it could be used by the ''A'' contractor to drain the excavation. The testimony of Mr. Wysockey shows that the sewer was constructed by the ''B'' contractor in accordance with the contract and the plans and specifications. The purpose of this sewer was to permit its use by the ''A'' contractor to drain the excavation and also as an outlet for the toilet. Wysockey, an engineer, represented the United States on the project, and it was his duty to see that the project was constructed in accordance with the plans and specifications. He testi-

fied that the "B" contract was completed on January 18, 1936. We are satisfied that the testimony introduced by plaintiff on the issue as to whether the sewer was constructed in accordance with the contract and the plans and specifications presented a question of fact for the jury, and that the trial judge was in error in finding as a proposition of law that the condition precedent had not been met.

Defendants point out that plaintiff alleged full performance of the contract and put in its proof upon the theory that there was no obligation upon it to prove the performance of the condition precedent, or any waiver by the defendants. Plaintiff did allege full performance and in our opinion made out a *prima facie* case of full performance. Plaintiff did not plead a waiver of the condition precedent, nor did defendants object to the testimony showing such waiver. Viewing the testimony so far introduced in the light most favorable to the plaintiff, the jury would have the right to say that in entering upon the performance of its contract before the sewer was installed, contractor "A" waived that provision of the contract. Plaintiff, however, did not file any pleading claiming a waiver, but did establish the alternative contention that sufficient evidence was introduced to make out a *prima facie* case that the sewer was constructed prior to February 26, 1936, when the "A" contractor terminated its contract for the alleged failure of plaintiff to cause the construction of a toilet sewer which would drain the excavation.

The Surety presents two additional points. The trial judge, in the opinion rendered at the time he ruled on the motions to direct a verdict, rested his decision on the failure of plaintiff to prove that the condition precedent, namely, the construction of the sewer by the "B" contractor had been proved. He did not discuss the two points urged by the Surety, which we will now consider. We agree with the

Surety that if the judgment of the trial court was correct, the reasons given in support of its findings are immaterial. The first additional point advanced by the Surety is that plaintiff is precluded from maintaining the instant action against it because such action was instituted more than six months after the work was finally accepted by plaintiff. This defense is based upon the following language of the bond:

"Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after six months from the date on which the work is finally accepted by the owner; provided further, that suit may be brought by reason of any default based upon failure of the principal to fulfill his obligation to furnish maintenance or repairs for any period of time after the work is completed, if provided for in the contract, at any time up to six months after the expiration of the time specified in the maintenance clause of the contract." Plaintiff contends that this limitation is not applicable to the factual situation because contractor "A" did not complete the work and, therefore, the work of contractor "A" was never finally accepted by the City. It was necessary for the City to secure a new contractor to complete the portion of the work called for by contract "A." Plaintiff points out that the work of the new contractor, R. C. Wieboldt Company, was finally accepted by the City, but that the work of the "A" contractor was never accepted. The Surety also points out that the bond was not prepared by it. The bond was a form prepared by the P.W.A. in accordance with its regulations. The Surety suggests that the bond, having been drawn by the P.W.A. and adopted by the plaintiff, it would be appropriate to construe the language most strongly against the plaintiff. The Surety also supports its argument by quoting from the various documents attached to the contract, and cites the case of *Fitger Brewing Co. v.*

*American Bonding Co.,* 127 Minn. 330, 149 N. W. 539. Plaintiff leans heavily on the opinion by Judge CARDOZO, speaking for the Court of Appeals of New York, in *Comey v. United Surety Co.,* 217 N. Y. 268. In that case the bond contained a provision that suit could not be brought more than six months after the work was completed. . The court said at page 277:

"A cause of action to recover damage for *refusal* to complete the work cannot be subject to a limitation which assumes completion of the work. That limitation applies when the work has been done *under* the contract." We agree with plaintiff that the six months limitation in the bond is not applicable. The work of the "A" contractor was never accepted because it was never completed. In our opinion the limitation as applied to the date when the work is finally accepted by the owner, refers to the work contracted to be done by the "A" contractor. As the work of the "A" contractor was never finally accepted, the only limitation which would be applicable is the general statute of limitations, and it is conceded that plaintiff has brought its action within the time permitted by that statute.

Finally, the Surety contends that the action and conduct of plaintiff in failing and refusing to accord it the 30-day period to take over the construction work, as provided in section 17 of the Construction Regulations, constituted both a substantial breach of the agreement and a repudiation of its provisions, which excused the Surety from its obligations under the bond. Section 17 of the Construction Regulations, being a part of the contract, provides that in the event the contractor violates the contract, the owner (plaintiff) may terminate the contract. It continues as follows:

"In the event of any such termination, the owner shall immediately serve notice thereof upon the surety and the contractor, and the surety shall have the right to take over and perform the contract . . .

within thirty days from the date of the mailing to such surety of notice of termination." On February 26, 1936, the "A" contractor notified plaintiff that it would proceed no further with the work, and that it was electing to terminate its contract. Five days later, March 2, 1936, plaintiff wrote the Surety advising it of the letter received from the contractor, and stated that since the contractor had not given any reason for breaking the contract the action amounted to a refusal to proceed. This letter further informed the Surety that plaintiff was compelled to look to the Surety for protection under the bond, and that if the Surety did not intend to take over the construction work and protect the plaintiff, the latter would be forced to proceed at once to receive new bids. The letter stated that it constituted a formal demand on the Surety to take the necessary action to protect the plaintiff. On March 6, 1936, the Surety wrote a letter to plaintiff stating that it did not intend to take over the completion of the work. It is clear to us that the Surety did not intend to take over the construction work which its principal abandoned. The Surety maintains that the demand made on March 2, 1936, was premature and illegal and could have no effect on the rights of the Surety. On April 1, 1936, a resolution was adopted by the city council authorizing the city attorney to send notice of termination to the Surety and to readvertise for bids on section A. The city attorney prepared the notice of intent to terminate dated April 1, 1936. This notice informed the "A" contractor that "unless construction is started within 10 days of the receipt of this notice the said contract shall cease and terminate and the City will take over the work and prosecute same to completion for the account and at the expense of the contractor, B-W Construction Company." Without waiting for an answer or any action by the "A" contractor, plaintiff proceeded on April 3, 1936 to

publish its readvertisement for bids on section A. On April 13, 1936, plaintiff sent the Surety a notice that plaintiff had terminated the contract with the "A" contractor. The notice to the Surety concluded: "In view of your previous written refusal to take over the construction work, contracted for by the B-W Construction Company, this city has readvertised for bids for the uncompleted portion of the contract of B-W Construction Company, and the City will look to you as Surety on the construction bond of B-W Construction Company for any damages and losses sustained by the City." The Surety points out that despite the fact that the 30-day period within which it had the right to take over the work, did not start to run until April 13, 1936, the date on which notice of termination was mailed, the plaintiff opened the bids which it had received on that date and on April 14, 1936, the plaintiff's city council passed a resolution accepting the bid of R. C. Wieboldt Company; that on April 16, 1936, plaintiff executed a contract with Wieboldt which specifically provided that the work "shall be commenced on or before April 28, 1936." The record shows that Wieboldt did not actually enter upon the site to commence construction work until May 14, 1936, 30 days from the time notice of termination had been sent. Plaintiff maintains that although the contract with Wieboldt was entered into prior to the 30-day period within which the Surety had a right to take over the performance of the contract, the existence of plaintiff's contract with Wieboldt did not prevent the Surety from completing the work if it had chosen to do so. We agree with the position of plaintiff. Section 17 of the Construction Regulations gave the Surety the right to take over and perform the contract within 30 days from the date of the mailing to such Surety of the notice of termination. The notice of the termination of the contract by the City was sent to the contractor and a copy to the Surety on April 13, 1936. Wieboldt did not commence construc-

tion under the new contract until May 14, 1936. The Surety did not exercise the right given to it to take over and perform the contract within 30 days from the mailing of the notice on April 13, 1936. It is true that the contract with Wieboldt was made on April 16, 1936, and had the Surety exercised its right "to take over and perform the contract" within 30 days from April 13, 1936, plaintiff might have had to defend a law suit brought by the Wieboldt Company. Such a dispute, however, would be a matter between the Wieboldt Company and plaintiff and would be of no concern to the Surety. Furthermore, we are of the opinion that the Surety's letter of March 6, 1936 constituted a waiver of its right to complete the work. However, as plaintiff did not raise the question of waiver in its pleading, we have not considered that point.

Because of the views expressed, the judgment of the circuit court of Cook county is reversed and the cause remanded with directions to grant plaintiff a new trial and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.