CONNECTICUT MUTUAL LIFE INSURANCE COMPANY et al., Plaintiffs,
  *v.* FRANK C. MOORE, as Comptroller of the State of New York,
  Defendant.

Supreme Court, Special Term, New York County, September 30, 1946.

*Nathaniel L. Goldstein, Attorney-General* (*Abe Wagman* of counsel), for defendant.

*Ganson J. Baldwin* for plaintiffs.

GAVAGAN, J.  This motion by the Attorney-General of the State of New York, for judgment on the pleadings dismissing the complaint, presents the question of the constitutionality of article VII of the Abandoned Property Law insofar as it purports to apply to foreign life insurance companies licensed to do business in this State, as well as other constitutional questions affecting domestic as well as foreign life insurance companies.

The action is brought by five life insurance companies, incorporated in other States but doing business here pursuant to license, against the Comptroller of the State of New York. It seeks (1) a declaratory judgment that article VII of the Abandoned Property Law is unconstitutional and void as to plaintiffs, and (2) an injunction against attempts by the comptroller to enforce the statute against them.

The Abandoned Property Law provides for the turnover to the State of property unclaimed by the owners thereof for such a length of time as to justify a presumption of abandonment. A mode of procedure is set up whereby the State takes such property into its custody and utilizes the same or its proceeds for the benefit of all the people until claim is made by the true owners.  The first attempt to bring life insurance policies within the statute was in 1939 (L. 1939, ch. 923).  The statute was expressly limited to domestic companies.  An action was commenced by New York Life Insurance Company for judgment declaring the 1939 law unconstitutional.  The suit was withdrawn, however, after the 1940 Legislature had amended the statute by restricting its application to policies " issued on the

lives of residents of this state '' (L. 1940, ch. 602). In 1944 the statute was amended so as to apply also to foreign life insurance companies authorized to issue policies of life insurance or annuities under '' paragraphs one and two of section forty-six of the insurance law '' (L. 1944, chs. 497, 498, § 2). In 1945 the Legislature passed a bill eliminating foreign companies from the scope of the statute. However, the bill also made the statute applicable to all policies issued by domestic companies by removing the existing restriction to policies issued upon the lives of residents, adopted in 1940. The bill was vetoed by the Governor, perhaps because of this proposed extension of the statute to all policies issued by domestic companies.

Article VII of the Abandoned Property Law deals with '' Unclaimed Life Insurance Funds ''. It consists of eight sections, numbered 700 to 707 inclusive. Section 700, defining what shall be deemed abandoned property, reads as follows: '' § 700. *Unclaimed life insurance corporation moneys.* 1. The following unclaimed property held or owing by life insurance corporations shall be deemed abandoned property:

'' (a) Any moneys held or owing by any life insurance corporation which shall have remained unclaimed for seven years by the person or persons appearing to be entitled thereto under matured life insurance policies on the endowment plan issued on the lives of residents of this state.

'' (b) Any moneys held or owing by any life insurance corporation which are payable under other kinds of life insurance policies issued on the lives of residents of this state where the insured, if living, would, prior to the thirty-first day of December next preceding the report required by section seven hundred one, have attained the limiting age under the mortality table on which the reserves are based, exclusive of

'' (i) any policy which has within seven years been assigned, readjusted, kept in force by payment of premium, reinstated or subjected to loan, or

'' (ii) any policy with respect to which such corporation has on file written evidence received within seven years that the person or persons apparently entitled to claim thereunder have knowledge thereof.

'' (c) Any moneys held or owing by any life insurance corporation due to beneficiaries under policies issued on the lives of residents of this state who have died, which moneys shall have remained unclaimed by the person or persons entitled thereto for seven years.

" 2. Any such abandoned property held or owing by a life insurance corporation to which the right to receive the same is established to the satisfaction of such corporation shall cease to be deemed abandoned."

Section 701 provides that on or before each April 1st every life insurance company shall make a report to the comptroller of property deemed abandoned by virtue of the provisions of section 700. Section 702 requires each company, within thirty days after its report to the comptroller, to publish a list of persons appearing to be the owners of unclaimed property held by the company. The list is to be accompanied by a statement that moneys unclaimed by the succeeding 31st day of August will be paid to the State Comptroller and that the company shall thereupon cease to be liable therefor. Section 703 directs each company to pay to the comptroller, in September, all property listed in its annual report as abandoned, except such property as shall have ceased to be abandoned since the date of the report. Sections 704, 705 and 706 are immaterial here. Section 707, added by chapter 452 of the Laws of 1946, declares that " Any life insurance corporation which has paid to the state comptroller moneys deemed abandoned property pursuant to the provisions of this article may make payment to any person entitled to all or any part thereof and shall thereby acquire all of the rights of such person to payment by the state comptroller."

Article XIV of the Abandoned Property Law, entitled " General Provisions ", contains a number of sections (1400 to 1413 inclusive) applicable to all the preceding articles, including article VII. Section 1400 provides that the expiration of the Statute of Limitations applicable to actions or proceedings against the insurance companies shall not prevent the claims against the companies from being deemed abandoned and shall not be a defense in a proceeding by the comptroller to compel the filing of a report or the payment of the abandoned property to him. Section 1401 obligates the comptroller to keep a public record of the names and addresses of the persons appearing to be entitled to the abandoned property. Section 1402 requires the comptroller to publish in October of each year a statement of the abandoned property delivered or paid over to him, with the names and last known addresses of the persons appearing to be entitled thereto, together with a statement that a claim for the property should be filed with the comptroller and that a service charge of 1%, but not less than $3, must be retained by the comptroller in connection with each claim allowed or estab-

lished. Section 1403 is not material here. Section 1404 declares that the care and custody of the abandoned property paid to the State is "hereby assumed for the benefit of those entitled to receive the same, and the state shall hold itself responsible for the payment of all claims established thereto pursuant to law, less any lawful deductions, which cannot be paid from the abandoned property fund." The section further relieves any company paying abandoned property to the comptroller from all liability with reference to such property and provides that no action shall be maintained against such company for the recovery of the property or for damages alleged to have resulted from such payment. Section 1405 declares that no owner of abandoned property shall be entitled to receive interest after the date of the report of abandoned property to the comptroller. Section 1406 provides for the filing of claims to abandoned property with the comptroller and vests in him full authority to determine claims, subject to the power of the Supreme Court to review his determination. Section 1407 requires the comptroller to deduct from any allowed claim 1% thereof, but not less than $3, as a service charge. It also provides for additional appropriations by the Legislature when necessary to keep the abandoned property fund sufficient to pay allowed claims. The remaining sections of article XIV are unimportant for the purposes of this motion, except perhaps section 1412, which imposes a penalty of $100 upon any person failing to file a report required by the statute, for each day that the report is delayed or withheld.

For the purposes of the present motion the allegations of the complaint must be deemed true. That pleading alleges that plaintiffs are incorporated in States other than New York and "for a great many years have done business in most of the other States of the United States pursuant to licenses granted by such States". It further appears from the complaint that the business of plaintiffs is conducted from their home offices, located in the States of their incorporation, where their officers, records and securities are situated; that applications for policies are obtained by agents and sent to the home offices for consideration, and if approved, that the policies are written at the home offices and sent to the agents for delivery to the applicants. Premiums are payable at the home offices, or, if paid to agents, are forwarded to the home offices. Notices as to premiums coming due and as to policy loans, interest on policy loans, lapses, etc., are mailed from the home offices. Loans on policies are considered and made at the home offices, and loan checks are

drawn at the home offices and mailed to the policyholders or to agents for delivery to policyholders. " Claims under policies must be made at the home offices, under the terms of the policies, which provide that upon receipt at the home office of ' due proof ' of death, or other event, the company will pay, etc., and all claims are considered at the home offices, and, if allowed pursuant to the terms of the policies, are paid by checks drawn at the home offices."

The complaint further alleges that " policies issued by the companies upon the lives of persons who appeared to reside in this State frequently have been and are delivered in some other State, and the premiums paid in other States "; that " policies issued by the companies frequently have been and are applied for and obtained in another State by an employer, creditor, partner, husband, wife, parent, or other person, for his or her own benefit, upon the life of a person who appeared to reside in this State "; and that " every year thousands of persons holding policies issued by the companies, including vested beneficiaries and assignees, have changed their residences from one State to another, and they continue to do so."

In the light of these allegations, plaintiffs contend that the Legislature of this State had no jurisdiction or power to direct a turnover to the State of " abandoned " claims upon insurance policies issued by them on the lives of New York residents. It is important to note that the statute, as it is worded, is not limited to policies issued or delivered in New York State, as part of the business which plaintiffs are licensed to do here. Article VII is directed at all " life insurance corporations ", a term defined in section 103 as including " any foreign corporation authorized to do either or both kinds of insurance business authorized in paragraphs one and two of section forty-six of the insurance law as amended from time to time." Under this statute, any foreign company, authorized to do a life insurance or annuity business here, is obliged to turn over to the State the amounts of all " abandoned " insurance policies " on the lives of residents of this state." It matters not that the person on whose life the policy was written may never have had any interest in the proceeds of the policy (the policy may have been applied for by a creditor or relative of the insured). It is immaterial that the policy may have been applied for, written and delivered outside the State of New York. It is of no consequence that the policy may be payable outside the State or that the person entitled to payment, and whose failure to make claim is deemed an abandonment under the statute, may never have

resided in the State. All that is necessary is that the policy insure the life of a New York resident.

It would seem to be obvious that the Legislature of this State would be without jurisdiction or power to compel foreign insurance companies, *merely because they are licensed to do business here,* to turn over to the State the amounts of all unclaimed insurance policies, *wherever written and delivered, and wherever and to whomsoever payable.* Nor would restriction of the statute to policies on the lives of New York residents alter the legal situation, irrespective of the date used for determining the insured's residence, for the residence of the person whose life is insured is not the proper criterion, by itself, for determining the situs of a claim upon a policy. The policy may have been obtained on the application of someone other than the insured and it may be payable to someone other than the insured. As to policies resulting from business done outside the State and having no relation to the license to do business here, the State is without jurisdiction. In *U. S. Mortgage & Trust Co.* v. *Ruggles* (258 N. Y. 32) the Court of Appeals declared (p. 40–41): " The State may not constitutionally regulate or interfere with the acts of foreign corporations outside its limits nor with the liberty of parties to take out contracts of insurance wherever they desire and collect the proceeds thereof. * * * the New York statute * * * could reach only business transacted within the State * * *." In *Mut. Life Ins. Co. of New York* v. *Cohen* (179 U. S. 262) the United States Supreme Court ruled that a New York statute, prohibiting the lapsing of policies for nonpayment of premiums or interest unless a notice had been mailed prior to the due date, would be unconstitutional if it applied to policies issued in other States by foreign insurance companies. The court said (p. 269): " That the legislature of New York could not control companies not organized under its laws as to their business transacted in other States is too clear for argument." In *Alaska Packers Assn.* v. *Comm'n.* (294 U. S. 532) the Supreme Court declared that (p. 540): " The due process clause denies to a state any power to restrict or control the obligation of contracts executed and to be performed without the state, as an attempt to exercise power over a subject matter not within its constitutional jurisdiction." In *Home Ins. Co.* v. *Dick* (281 U. S. 397) the same court stated (p. 410) that " It [the State] may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them."

The determination of the situs of intangibles depends on a " common sense appraisal of the requirements of justice and convenience " in the particular situation involved (*Severnoe Securities Corp.* v. *L. & L. Ins. Co.*, 255 N. Y. 120, 123–124, CARDOZO, Ch. J.) : " The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found * * *. At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions * * *." Applying this test to the case under consideration, we find that the criterion for determining situs contained in the Abandoned Property Law, viz., the residence of the insured, is not one which satisfies the requirements of justice and convenience. The primary domicile of the debtor (the State of incorporation of the insurance company), the domicile of the creditor (the person entitled to the proceeds of the policy), the place where the contract of insurance was made, the physical location of the policy itself, and the place where the contract embodied in the policy is to be performed — these are all ignored in the statute presently under attack. That the selection of the residence of the insured as the sole criterion of situs for purposes of transferring to the State the amounts of all abandoned policy claims does not satisfy the requirements of justice and convenience must be too evident to need elaboration. States where the contracts of insurance were made, where the debtor insurance companies are incorporated, and/or where the persons entitled to the proceeds of the policies reside, certainly have better and stronger rights to assert jurisdiction over the abandoned policy claims. It is neither just nor convenient, as far as the debtors and creditors on the policies are concerned, for the State of New York to compel foreign insurers to turn over to it proceeds of policies of insurance which have no connection whatsoever with the business done by them in New York and which bear no relationship whatever to this State, except for the residence of the persons on whose lives the policies were issued. As a practical matter, hardship would be likely to result to the foreign insurers if they were obliged to yield to New York as to such policies. Compliance with the New York statute might well subject such foreign companies to double liability, complete

or partial. Other States with better rights to exercise jurisdiction may pass similar statutes, and it would be no defense to the companies, as against attempts to enforce those statutes, that they had complied with the laws of New York, whose claim to jurisdiction rested solely on the insured's residence there. Indeed, the complaint alleges that the States of Michigan, Pennsylvania and Kentucky have already enacted similar statutes and that the legislatures of other States are contemplating analogous legislation. Prior to the 1946 amendment, which added section 707 to the Abandoned Property Law, plaintiffs would also have been subject to the risk that persons entitled to the proceeds of the " abandoned " insurance policies might start suits in other States whose courts would refuse to recognize as valid the provision of section 1404 which purports to relieve an insurer making payment to the New York Comptroller from liability to anyone in respect of the abandoned property turned over to the comptroller. The 1946 amendment gave the companies who had complied with the statute the right to acquire the claimants' rights against the State, by paying the claimants the amounts of their claims. Since a " service " charge of 1% (and not less than $3) must be deducted when a claim is paid by the State, the insurance companies, even if they went to the trouble of making payments to claimants from their own funds after they had already made equivalent payments to the comptroller, would be obliged to suffer a loss of 1% of their second payment, as well as of all interest thereon to the time they received partial reimbursement from the State. It is, therefore, apparent that the amendment leaves the companies exposed to some risk of loss, and perhaps double liability, even if they comply with our statute.

Nearly all life insurance companies do business in many States, and many do business in almost every State. To allow every State in which they do business to claim the right to custody of the amount of every " abandoned " policy ever issued by them anywhere would result in chaos. Use of the residence of the insured as the determinant of jurisdiction would not be either logical or practical — not only because the insured's residence is immaterial under any recognized rule for ascertaining situs, but also for the reason that the residence of the insured is unknown to the insurer, in many instances at least (the complaint, which must be regarded as true on this motion, so alleges).

The authorities cited by the Attorney-General as supporting the validity of the statute have no applicability to a legislative

attempt to compel foreign corporations to turn over to the State unclaimed funds or property *which had their origin in business transacted outside the State*. In *Anderson Nat. Bank* v. *Luckett* (321 U. S. 233) the court held that the State of Kentucky had the right to compel the turnover to it of unclaimed bank deposits in a national bank *located in Kentucky* because (p. 241): " The deposits are debtor obligations of the bank, *incurred* and to be performed *in the state where the bank is located,* and hence are subject to the state's dominion " as (p. 248) " a part of the mass of property within the state whose transfer and devolution is subject to state control." (Italics supplied.) In *Security Bank* v. *California* (263 U. S. 282) in upholding a similar statute of California dealing with savings bank deposits, the court emphasized that (p. 283–284) " The bank is a California corporation and has its only place of business there ", adding (p. 285): " The unclaimed deposits are debts due by a California corporation with its place of business there. * * * The debts arose out of contracts made and to be performed there. * * * the deposits are clearly intangible property within the State. Over this intangible property the State has the same dominion that it has over tangible property." In *Provident Savings Institution* v. *Malone* (221 U. S. 660) a Massachusetts savings bank attacked as unconstitutional a Massachusetts statute. As in the *Anderson* and *Security Bank* cases (*supra*) no question of a legislative attempt to exercise extraterritorial jurisdiction was presented. The situs of the claims of depositors against the Massachusetts savings bank was clearly in Massachusetts where the deposits were made and payable. *Brooklyn Borough Gas Co.* v. *Bennett* (154 Misc. 106) likewise involved no question of the right of a State to direct the turnover to it of property outside the State. The statute there involved related to deposits with public utility companies within the State and the action was brought by a domestic company. In holding the statute valid the court declared that (p. 114): " The jurisdiction of a State *over property within its borders* under circumstances indicating an abandonment by the owners thereof has been repeatedly sustained." (Italics supplied.) In *United States* v. *Klein* (303 U. S. 276) the statute dealt only with deposits in courts (p. 278, n.) " in and for any district within this Commonwealth ", and in a later phase of the same litigation (106 F. 2d 213, certiorari denied 308 U. S. 618) the court expressly stated (p. 215) that " In order to give jurisdiction to the state courts the res must have its situs within the territorial limits of the state."

That the " abandoned " property must be actually or constructively within the territorial limits of the State appears to be recognized by the Attorney-General in Point I of his brief. He contends, however, that the domestic agencies of the foreign plaintiffs are to be treated as domestic corporations and that, therefore, " the situs of the debt or claim is in this State " (Attorney-General's brief, Point III). The authorities cited do not support the proposition that a foreign corporation, licensed to do business in this State, is to be treated as a domestic corporation *in connection with business transacted outside the State and having no relation to its authority to do business here.* In *Comey* v. *United Surety Co.* (217 N. Y. 268, 274) the holding was merely that a foreign corporation, licensed to engage in business in New York, and possessing a representative to receive service here, was not to be deemed absent from the State and could therefore avail itself of the Statute of Limitations as if it were a domestic company. Obviously this decision is not in point here. Although the court did say that *" for many purposes "* (italics supplied) a foreign insurance company transacting business here " must be ' treated as a domestic insurance company and as domiciled in this state ' ", it did not go so far as even to suggest that for the purpose of a taking over by the State of abandoned claims *arising out of business transacted outside the State* the foreign corporate debtor was to be treated as domiciled in this State. In *Morgan* v. *Mutual Benefit Life Ins. Co.* (189 N. Y. 447) cited in the *Comey* opinion (*supra*) and also in the Attorney-General's brief, the policy had been issued in New York, to a resident of New York, by a foreign life insurance company authorized to do business here. In an action brought by the legal representatives of a pledgee of the policy to establish an equitable lien thereon, it was held that service by publication upon nonresident children of the deceased insured was good because the action sought to enforce a lien upon a *res* within the State. In holding that the situs of the claim upon the policy was here, the court emphasized that *the contract of insurance was made in New York State* as part of the business which the company was licensed to transact here. In *Martine* v. *International Life Ins. Society* (53 N. Y. 339, 348) the statement that foreign corporations doing business here " must be regarded as domiciled by the residence of its general agents and its local organization " was qualified by the preceding words " As to the business transacted here ".

That the Attorney-General recognizes that the statute is unconstitutional if applied to policies written outside the State

seems evident from the fact that his brief contains a statement (p. 15) that the statute is not applicable " to policies written by a foreign branch of a foreign company, even though the policy be written on the life of a resident of this State." This statement does not, however, obviate passing upon the constitutionality of the statute, as applied to policies written outside the State, for two reasons. In the *first* place, there is nothing in the literal wording of the statute itself to indicate that it was intended to apply only to policies resulting from business done within the State. It does not follow that because the statute was restricted as to foreign companies, to those authorized to do business here, that its scope was intended to be limited to policies emanating from business done here by such companies. *Secondly,* and more important, the complaint alleges and it must be deemed true for the purposes of this motion to dismiss, that the comptroller is attempting to enforce the statute even where " a policy may have been delivered in another State, and although a policy may have been applied for and obtained in another State." The Attorney-General's brief does not dispute the claim that the comptroller has been attempting to enforce the statute even as to policies having no relation to the companies' license to do business here, nor does it state that such efforts will cease. In the circumstances, plaintiffs are entitled to obtain a definite adjudication as to the validity of the statute and of the comptroller's rights against them thereunder.

The Attorney-General's contention, that plaintiffs are not aggrieved and cannot be heard to plead the alleged infringement of the constitutional rights of the insured or of beneficiaries under the policies, appears to overlook that, as previously pointed out, payment to the comptroller might subject plaintiffs to double liability, complete or partial. If they make payment to the comptroller in compliance with the statute they will never have another opportunity to raise the question. The words of Chief Justice Stone in *Anderson Nat. Bank* v. *Luckett* (321 U. S. 233, *supra*) are pertinent here (pp. 242–243) : " But if the statute is deficient in its provisions for notice and opportunity for hearing so that the depositors would not be bound by any proceedings taken under it, the bank would be entitled to raise the question whether its obligations to the depositors would be discharged by payment of the deposits to the state."

The conclusion arrived at, that the statute is invalid insofar as it purports to apply to policies written outside of the State by foreign companies, does not, however, necessarily require a **holding** that it is *entirely* void, i.e., even as to policies written

in this State as part of the business which the foreign companies transact here pursuant to license. Thus in *Mut. Life Ins. Co. of New York* v. *Cohen* (179 U. S. 262, *supra*) a statute of New York that no life insurance company doing business in that State should have the power to declare forfeited or lapsed any policies thereafter issued or renewed, for nonpayment of premium or interest, unless a premium notice had been mailed as required by the statute, was held unconstitutional as to policies written by foreign companies outside the State of New York, but valid and enforcible as to policies written in New York by the domestic agencies of the foreign insurers. The statute in the cited case, like the one here involved, purported to apply to all insurance written by any company doing business here, without containing any limitation to the insurance written here. That the unconstitutionality of the application of part of the Abandoned Property Law should not affect the validity of the statute in other respects is expressly provided for in section 1501 of that statute: " If any *part*, provision or section of this chapter, *or the application of any such part*, provision or section *in any particular respect,* shall be adjudged by any court of competent jurisdiction to be unconstitutional or ineffective *in whole or in part,* such judgment shall be confined in its operation to the particular provision or section or *application* directly involved in the controversy in which such judgment shall have been rendered and shall not affect, impair or invalidate the remainder of such provisions or sections or their *application* in other respects; and to the extent that such provisions or sections are not unconstitutional or ineffective, they shall remain in full force and effect." (Italics supplied.)

It is necessary, therefore, to consider whether the Abandoned Property Law is constitutional insofar as it attempts to legislate with respect to claims on policies written by *domestic* branches or agencies of foreign life insurance companies *in this State* on the lives of residents of this State. As to such policies it would seem that the foreign companies ought to be treated as domiciled in this State. In *Morgan* v. *Mutual Benefit Life Ins. Co.* (189 N. Y. 447, *supra*) the Court of Appeals said (p. 454): " As to such a claim the insurance company should be treated as a domestic insurance company and as domiciled in this state. * * * Whenever a question as to the situs of a similar claim against an insurance company doing business in a state pursuant to the statutes thereof has been directly involved in this court or in the Federal courts, and it has been sought to uphold the situs of the claim *in the state where the contract was made,*

it has been sustained." (Italics supplied.) In *Martine* v. *International Life Ins. Society* (53 N. Y. 339, *supra*) the same court declared (p. 348): *" As to the business transacted here,* the company must be regarded as domiciled by the residence of its general agents and its local organization." . (Italics supplied.)

The statement in plaintiffs' brief that (p. 44) *" Morgan* v. *Mutual Benefit Life* * * * seems to have been overruled by *Hanna* v. *Stedman,* 230 N. Y. 326 ", may, perhaps, be true where the question to be determined is whether there is such a *res* within this State as would justify service by publication on a nonresident. (It is to be noted, however, that the holding in the *Hanna* case [230 N. Y. 326, *supra*] was merely that an action in equity for interpleader, in which no specific fund had been set aside, was an action in personam rather than an action in rem, while the action in the *Morgan* case (*supra*) was to declare and enforce a lien on a policy claim, and that the holdings may therefore not be necessarily inconsistent.) But the *Hanna* case can hardly be deemed authority for the proposition that the State where the contract of insurance was made is without jurisdiction to pass a statute such as the one here under consideration. The fact that the action of interpleader was held to be in personam rather than in rem, is no indication whatsoever that the court which decided the case would have held that New York State, where the main office of the insurance company was located, did not possess jurisdiction to compel a turnover to it of abandoned proceeds of the membership certificates. Indeed, the position of these very plaintiffs is that the situs of the amounts owing on the abandoned policies is " the State in which the insurance company is incorporated " (plaintiffs' brief, p. 19). As applied to the facts of the *Hanna* case, this would mean that this State would have had jurisdiction to escheat the proceeds of the membership certificates there involved had they been abandoned. The determination that an action of interpleader was not in rem and that the courts of this State had no jurisdiction without personal service within the State therefore has no bearing whatever on the question as to which State would have had power to take custody of the proceeds of the certificates had they been deemed abandoned for lack of claim.

As to policies *written or delivered in this State* by domestic agencies of foreign life insurance companies, the situation is, as heretofore pointed out, that the domicile of the debtor companies must be deemed to be in this State. In addition, the statute, by its terms, is applicable only to policies issued on the lives of New York residents.

" A common sense appraisal of the requirements of justice and convenience in [the] particular conditions " (*Severnoe Securities Corp.* v. *L. & L. Ins. Co.,* 255 N. Y. 120, 123-124, *supra*) rules out the only other possible states, viz., (1) the domiciles of those entitled to claim the proceeds of the policies, and (2) the States of incorporation of the foreign companies.

(1) The residences of those who might at any particular time be entitled to the proceeds of the policies (either as beneficiaries, assignees or otherwise), i.e., the creditors, are obviously scattered throughout the country and elsewhere, and, in the case of unclaimed funds, often, if not almost always, unknown to the insurance companies. It would, therefore, be impracticable, to say the least, to adopt the doctrine that the States of the residences of the creditors are the ones possessing jurisdiction to compel the debtor companies to turn over to them unclaimed funds. This was apparently recognized by the United States Supreme Court in *Anderson Nat. Bank* v. *Luckett* (321 U. S. 233, *supra*) for the jurisdiction of Kentucky was upheld although the depositor-creditors included nonresidents of the State. The court went so far as to hold that the sheriff's posting of notice on the bulletin board of the county in which the property was located was sufficient notice to all depositors, considered in conjunction with the notice given by the passage of the statute and the taking over of the property by the State. Plaintiffs themselves oppose the use of the domiciles of those entitled to make claims on the policies as the criterion of situs, urging that (plaintiff's brief, p. 19) " the only practical situs for the purposes of such a statute would be the state in which the insurance company is incorporated, because that is known, whereas the domicile of the missing policyholder, or beneficiary, or assignee, is unknown ".

(2) The only other possible criterion for determining situs is the State of incorporation of the foreign insurance company. Where the policy is written or delivered in New York by a domestic branch or agency of a foreign insurance company, there seems to be no justification for ascribing the situs of the claim to the main office of the company in another State. The fact that the policies may require presentation of claims at the home offices, and that checks in payment are issued at the home offices, does not seem to be as potent or compelling a consideration, for the purposes of determining which State possesses jurisdiction, as the fact that the policies were written and/or delivered in New York by New York agencies of the companies and insured the lives of New York residents. The court accord-

ingly holds that *as to such policies* the Legislature of the State of New York had jurisdiction to direct the companies to turn over to its custody claims deemed to have been abandoned. It follows that compliance with the legislative mandate as to said policies will not expose the companies to the risk of double liability either as the result of suits brought by claimants or by reason of similar statutes of other States. Thus in *Anderson Nat. Bank* v. *Luckett* (321 U. S. 233, *supra*) the court said (p. 242): " Since the bank is a debtor to its depositors, it can interpose no due process or contract clause objection to payment of the claimed deposits to the state, *if the state is lawfully entitled to payment, for in that case* payment of the debt to the state, under the statute, relieves the bank of its liability to depositors." (Italics supplied.)

The other grounds upon which plaintiffs attack the statute as unconstitutional are equally available to domestic insurance companies. Since the 1940 amendment, which restricted the scope of the 1939 statute to policies issued by domestic companies on the lives of residents of this State, no domestic company has questioned the validity of the statute. The various contentions of the plaintiffs will be now considered seriatim.

It is urged that until due proofs have been filed with the companies of the occurrence of the contingencies which make the policies payable (such as death of the insured or expiration of the term of an endowment policy) the persons entitled to the benefits of the policies possess at most " inchoate or potential choses in action ". Paragraph (a) of subdivision 1 of section 700 requires the turnover of unclaimed amounts of *matured* endowment policies and paragraph (c) makes like provision as to policies on the lives of residents *who have died*. Clearly, as to such policies, the failure to file formal proofs with the companies is no different in principle than the failure to produce savings bank books, the production of which savings banks uniformly make a condition precedent of payment. Yet the United States Supreme Court has upheld the validity of statutes, similar to our Abandoned Property Law, which have been directed at savings banks (*Provident Savings Institution* v. *Malone*, 221 U. S. 660, *supra; Security Bank* v. *California*, 263 U. S. 282, *supra*), notwithstanding the absence of any statutory requirement that the bank books be produced. The only other policies covered by the statute are those specified in paragraph (b), viz., where the insured, if living, would have reached the maximum age of " the Mortality Table " (this varies from about 96 to 100, according to the table used). It would seem

that as to the amounts of such policies there is ample basis for holding that the choses in action are no longer merely potential or inchoate, and for permitting a State to take over custody, not for itself, but for the benefit of the claimants if they should ever appear.

Plaintiffs further contend that they may possess all kinds of defenses to claims upon many of the policies and that it would be unconstitutional to deprive them of such defenses. The complaint fails, however, to state any facts showing the existence of any specific defense to any specific policy. *Certainly the fact that the companies may possess valid defenses to some of the policies does not render the statute unconstitutional, insofar as other policies are concerned to which there are no valid defenses.* It is probably true that the companies may possess certain defenses to some of the policies which it would be unconstitutional to take from them by compelling a turnover to the State of the amounts of the policies. The proper remedy of the companies in such situations is to refuse to turn over the amounts of such policies, and, if deemed advisable, to sue for declaratory judgments, alleging the appropriate facts in the complaint. It is to be noted that some defenses which the companies might be able to assert in suits brought against them on the policies may not be available to them as grounds for refusing to make a turnover to the State. Examples are defenses based on failure to file proofs of death, etc., and also, *perhaps,* defenses of the Statute of Limitations.

Plaintiffs also argue that the statute in reality attempts to take from them their own property, since they possess no fund or *res* specifically set aside for each policy. It is sufficient answer to observe that in the case of savings banks and national banks no specific fund or *res* is set aside for each depositor and yet similar statutes directed at such banks have been held constitutional by the highest court of the land on the theory that a State may take into its custody choses in action presumed to have been abandoned.

The contention that the statute is invalid because it " attempts to substitute the State of New York as insurer under these policies, regardless of the rights and wishes of the insurance companies and their policyholders " (plaintiffs' brief, p. 21) and that the statute therefore impairs the obligations of contracts is inconsistent with the Supreme Court decisions upholding similar statutes as to national banks and savings banks. Even the fact that the statute in *Provident Savings Institution* v. *Malone* (221 U. S. 660, *supra*) provided for the State's paying

a lower rate of interest than that payable by the plaintiff savings bank was held not to invalidate the enactment, the court declaring that it was not open to the bank to raise a question which only affected its depositors.

Plaintiffs make much of the fact that section 1400 of the Abandoned Property Law deprives them of the defense of the Statute of Limitations in cases where they would possess such defense in actions by claimants on the policies. Here again, the fact that as to some policies they might have a good defense based on the Statute of Limitations would not be ground for invalidating the Abandoned Property Law in respect of its application to cases where no such defense exists. Plaintiffs' proper remedy, to raise the question, is to allege the specific facts in suits for declaratory judgment confined to the specific policies as to which plaintiffs claim to have a good defense based on the Statute of Limitations. It is unnecessary, for the purposes of the present motion, to determine whether the Attorney-General is correct in his contention (for which he cites *Com. ex rel. Margiotti* v. *Cunningham,* 337 Pa. 289; *State* v. *Marshall & Ilsley Bank,* 234 Wis. 375; 30 C. J. S., Escheat, § 3, p. 1170, and other authorities) that the Statute of Limitations does not extinguish the debt but only the creditor's remedy, and that, therefore, escheat and similar statutes, which deal with the rights of the State, rather than those of the creditor, "are not rendered invalid by reason of the fact that the statute of limitations has run against the unknown depositor or person primarily entitled to the money or property." (30 C. J. S., Escheat, § 3, p. 1170.)

The contention is also made by plaintiffs that the statute violates the provision of section 19 of article III of the New York Constitution that "No claim against the state shall be audited, allowed or paid which, as between citizens of the state, would be barred by lapse of time." This provision obviously does not apply to the rights of claimants to funds taken into the State's *custody* for their benefit. The State under the statute does not take title to the abandoned funds. Furthermore, even if the claims were interpreted as being "against the State" within the meaning of the constitutional provision, the time would not commence to run in favor of the State until it obtained delivery of the funds. The purpose of the constitution is merely to assure that no longer Statute of Limitations will be enacted for claims against the State than those applicable to claims against citizens of the State.

Some mention is made in plaintiffs' brief of the expense of preparing reports and arranging advertising for which, it is

claimed, the companies receive no compensation. No real point is made of this, however. Section 1409 provides that any amount paid to newspapers for any publication of names required by the statute shall be charged equally against all abandoned property held or owing at the time of the publication, except abandoned property of individual amounts of less than twenty-five dollars. The expense of preparing reports of abandoned claims, equally applicable to domestic and foreign corporations, is one which the State may impose without rendering the statute unconstitutional.

The claim made in the complaint that the statute constitutes an unreasonable burden upon interstate commerce has been withdrawn.

The motion for judgment on the pleadings dismissing the complaint is accordingly denied, insofar as the statute is claimed to be invalid as to policies written outside the State by foreign branches of foreign insurance companies, and otherwise granted.