CONNECTICUT MUTUAL LIFE INSURANCE COMPANY et al., Appellants, *v.* FRANK C. MOORE, as Comptroller of the State of New York, Respondent.

Argued April 14, 1947; decided July 2, 1947.

*Ganson J. Baldwin* for appellants. I. The Abandoned Property Law is unconstitutional in its application to foreign life insurance companies. (U. S. Const., art. I, § 10, 14th Amendt.;

N. Y. Const., art. I, §§ 6, 7, subd. [a].) II. The statute attempts to annul the conditions of the policies and to create debts which do not exist. (*O'Reilly* v. *Guardian Mutual Life Ins. Co.*, 60 N. Y. 169; *Wachtel* v. *Equitable Life Assur. Soc.*, 266 N. Y. 345; *People* v. *Briggs*, 193 N. Y. 457; *Glennie* v. *Falls Equipment Co.*, 238 App. Div. 7.) III. Nothing in the statute justifies its application retroactively to policies previously issued, which would be unconstitutional. (*Boswell* v. *Security Mut. Life Ins. Co.*, 193 N. Y. 465; *United States Mortgage & Trust Co.* v. *Ruggles*, 258 N. Y. 32; *Weiler* v. *Dry Dock Sav. Inst.*, 258 App. Div. 581, 284 N. Y. 630.) IV. If the statute is retroactive it illegally attempts to revive claims barred by Statutes of Limitation. (*Robinson* v. *Robbins Dry Dock & Repair Co.*, 238 N. Y. 271; *County of Erie* v. *Lowenstein*, 235 N. Y. 458; *Campbell* v. *Holt*, 115 U. S. 620; *Hopkins* v. *Lincoln Trust Co.*, 233 N. Y. 213; *Mason* v. *Henry*, 152 N. Y. 529; *Baldwin* v. *Martin*, 14 Abb. Prac. [N. S.] 9; *Munn* v. *Masonic Life Assn.*, 189 N. Y. 486; *Brust* v. *Barrett*, 16 Hun 409, 82 N. Y. 400.) V. Assuming (contrary to the facts and the law) that these policies represent debts, the situs and jurisdiction to escheat must be in the state of incorporation of the insurance company, which is the only known factor. (*Sevenoe Securities* v. *L. & L. Ins. Co.*, 255 N. Y. 120; *Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233; *Security Bank* v. *California*, 263 U. S. 282; *United States* v. *Klein*, 303 U. S. 276; *Furey* v. *Town of Gravesend*, 104 N. Y. 405; *Addison* v. *Holly Hill Co.*, 322 U. S. 607; *Mutual Life Ins. Co.* v. *Cohen*, 179 U. S. 262; *Comey* v. *United Surety Co.*, 217 N. Y. 268.)

*Nathaniel L. Goldstein, Attorney-General* (*Abe Wagman* and *Wendell P. Brown* of counsel), for respondent. I. The constitutionality of custodial statutes such as the one in question is no longer open to question. (*Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233; *Security Sav. Bank* v. *State of California*, 263 U. S. 282; *Provident Institution for Savings* v. *Malone*, 221 U. S. 660; *Brooklyn Borough Gas Co.* v. *Bennett*, 154 Misc. 106; *Philadelphia Electric Company Case*, 352 Pa. 457; *United States* v. *Klein*, 303 U. S. 276, 106 F. 2d 213, 308 U. S. 618.) II. The unclaimed funds covered by section 700 of the Abandoned **Property** Law are not the property of the insurance companies,

but rather unclaimed liquidated debts due and owing from the companies to those insured or their beneficiaries. (*Reed* v. *Provident Society*, 190 N. Y. 111; *Anderberg* v. *Metropolitan Life Ins. Co.*, 269 App. Div. 640; *McDonnell* v. *Mutual Life Ins. Co.*, 131 App. Div. 643; *Van Saun* v. *Metropolitan Life Ins. Co.*, 135 Misc. 855; *Philadelphia Electric Company Case*, 352 Pa. 457; *Carolene Products Co.* v. *United States*, 323 U. S. 18; *Keck* v. *Metropolitan Life Ins. Co.*, 238 App. Div. 538, 264 N. Y. 422; *Van Valkenburgh* v. *American Popular Life Ins. Co.*, 70 N. Y. 605; *Goell* v. *United States Life Ins. Co.*, 265 App. Div. 735; *Hirsch* v. *New York Life Ins. Co.*, 267 App. Div. 404; *Buffalo L. T. Safe Deposit Co.* v. *Knights T. & M. Mut. Aid Assn.*, 126 N. Y. 450.) III. The domestic agencies of the foreign plaintiff corporations are in the eyes of the law complete and separate organizations which are to be treated as domestic corporations; the situs of the debt or claim is in this State. (*Comey* v. *United Surety Co.*, 217 N. Y. 268; *Morgan* v. *Mutual Benefit Life Ins. Co.*, 189 N. Y. 447; *Martine* v. *International Life Ins. Soc. of London*, 53 N. Y. 339; *Moscow Fire Ins. Co.* v. *Bank of New York & Trust Co.*, 280 N. Y. 286; *United States* v. *Moscow Fire Ins. Co.*, 309 U. S. 624; *Matter of Vanderbilt*, 281 N. Y. 297; *United States Mortgage & Trust Co.* v. *Ruggles*, 258 N. Y. 32; *Mutual Life Ins. Co.* v. *Cohen*, 179 U. S. 262; *Headley* v. *City of Rochester*, 272 N. Y. 197; *Tileston* v. *Ullman*, 318 U. S. 44; *Voeller* v. *Neilston Co.*, 311 U. S. 531; *Pratt* v. *La Guardia*, 182 Misc. 468, 268 App. Div. 973, 294 N. Y. 842.) IV. The statute in no way violates appellants' constitutional rights as to due process and the contract clause generally. (*Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233; *Security Bank* v. *State of California*, 263 U. S. 282.) V. Nor as to the Statute of Limitations. (*State* v. *Marshall & Illsey Bank of Milwaukee*, 234 Wis. 375; *Commonwealth ex rel. Margiotti* v. *Cunningham*, 337 Pa. 289; *Matter of Pennsylvania Indemnity Corp.*, 37 Pa. D. & C. 208; *Matter of City of New York* [*Elm Street*], 239 N. Y. 220; *Campbell* v. *Haverhill*, 155 U. S. 611; *Gardner* v. *Northwestern Mut. Life Ins. Co.*, 246 App. Div. 868, 272 N. Y. 592.) VI. Nor is the statute violative of section 19 of article III of the State Constitution.

LOUGHRAN, Ch. J. This case presents questions as to the validity of the New York Abandoned Property Law in its application to unclaimed life insurance funds.

The gist of the relevant operative sections of the statute is as follows: Abandoned property includes any moneys, held or owing by any life insurance company which have remained unclaimed for seven years by the person or persons entitled thereto under (1) matured life insurance policies on the endowment plan issued on the lives of residents of this State; (2) other kinds of life insurance policies issued on the lives of residents of this State, where the insured, if living, would have attained the limiting age under the mortality table on which the reserves are based; (3) life insurance policies issued on the lives of residents of this State who have died (§ 700). On or before April 1st, in each year, every life insurance corporation shall make a verified written report to the State Comptroller of all such abandoned property held or owing by it (§ 701). Within thirty days thereafter such corporation shall publish a newspaper notice to the persons appearing to be entitled to any of such unclaimed moneys together with a statement (1) that a list of the names of such persons is on file and open to public inspection at the principal office of the corporation; (2) that payment of such unclaimed moneys will be made on or before the succeeding August 31st, to persons establishing their right thereto; and (3) that in the succeeding September such unclaimed moneys still remaining will be paid to the State Comptroller, after which the insurance corporation shall cease to be liable therefor (§ 702). Such payment shall be made to the State Comptroller at the time so fixed (§ 703). Thereupon the care and custody of such property shall pass to the State, the State shall be responsible for all claims established thereto pursuant to law less any lawful deductions, and the insurance corporation shall be relieved of liability for any such claim (§ 1404).* The State Comptroller shall publish annual statements of abandoned property received by him and not paid to

---

* Section 707, added by chapter 452 of the Laws of 1946, provides: "Any life insurance corporation which has paid to the state comptroller moneys deemed abandoned property pursuant to the provisions of this article may make payment to any person entitled to all or any part thereof and shall thereby acquire all of the rights of such person to payment by the state comptroller."

claimants (§ 1402). Claims may be filed with him for such property and his determination thereof shall be subject to review in the courts (§ 1406). The statute shall be enforced notwithstanding the bar of any statute of limitations (§ 1400).

Whether these parts of the statute should be declared unconstitutional is the question to be determined. The plaintiffs are a number of foreign life insurance companies that are licensed to do business in this State. The State Comptroller is the defendant. Upon motions made by all parties for a decision on the pleadings, Special Term annulled the statute insofar as it pertains to policies of life insurance issued for delivery outside the State of New York, but upheld the challenged provisions in all other respects, except that the court put aside an issue as to the asserted unlawful operation thereof upon defenses that life insurance companies may have to claims upon their insurance contracts. From so much of the judgment of Special Term as denied relief prayed for by them, the plaintiff companies appealed to the Appellate Division, and, when a unanimous affirmance followed, they brought the case to this court as of right on the basis of the constitutional questions that are directly involved. Since the defendant State Comptroller has at all times been content with the decision of Special Term, we are here concerned only with the effect of the statute upon presumptively abandoned proceeds of insurance policies issued upon the lives of residents of this State and delivered within its borders by companies doing business here, and what follows has reference to policies so issued and delivered and to no others.

Each of the plaintiff companies concededly has its home office outside this State and, by his motion for judgment on the pleadings, the defendant State Comptroller admits the following allegations of the complaint. " The business of the plaintiffs, and other life insurance companies, is conducted from their Home Offices, where their officers, records, and securities are situated. Applications for policies are obtained by agents throughout the United States, and are sent to the Home Offices for consideration, and, if approved, the policies are written at the Home Offices and are sent to the agents for delivery to the applicants. Premiums are payable at the Home Offices, or, if

paid to an agent, are forwarded to the Home Offices. * * * Claims under policies must be made at the Home Offices, under the terms of the policies, which provide that upon receipt at the Home Office of ' due proof ' of death, or other event, the company will pay, etc., and all claims are considered at the Home Offices, and, if allowed pursuant to the terms of the policies, are paid by checks drawn at the Home Offices.'' On the strength of the above circumstances, the plaintiff companies insist that their debtor obligations under the contracts in question are beyond the territorial reach of the power of the New York Legislature.

Other defects imputed to the statute by the companies may be summarized in this manner: it cancels provisions of insurance contracts whereby the proceeds become payable only upon filing of due proof of specified events, e.g., death, age, survival, and upon surrender of the policy; it takes away defenses to policies, e.g., misrepresentation and breach of conditions; if given retrospective effect, it will operate to revive claims which at the time of its enactment were barred by the Statute of Limitations. In the foregoing aspects, the statute, as the plaintiff companies see it, is not only repugnant to the due process clauses, but also impairs the obligation of contracts, takes private property for public use without making just compensation therefor and runs foul of the fundamental demand for the equal protection of equal laws. (U. S. Const., art. I, § 10; 14th Amendt.; N. Y. Const., art. I, §§ 6, 7, subd. [a].)

The reason of the statute is plain enough. Section 102 says: " It is hereby declared to be the policy of the state, while protecting the interest of the owners thereof, to utilize escheated lands and unclaimed property for the benefit of all the people of the state, and this chapter shall be liberally construed to accomplish such purpose.'' (See *Moufang* v. *State of New York*, 295 N. Y. 121, 127–128.) In accordance with the object first so stated, the Legislature has substituted the State for the plaintiff companies as debtor upon the policies in question and at the same time has secured to the policy-creditors appropriate notice thereof with an opportunity to be heard and with the further right to resort to the courts should payment by the State be refused. Such a statu-

tory scheme fulfills the procedural requirements of due process (*Anderson Nat. Bank* v. *Luckett*, 321 U. S. 233).

In the case just cited — where approval was given to a like scheme for State administration of abandoned bank deposits remaining in a national bank within the State — the court said: " The deposits are debtor obligations of the bank, incurred and to be performed in the state where the bank is located, and hence are subject to the state's dominion " (321 U. S. at p. 241). Here the circumstances relied upon as a justification for the exercise of State power are not essentially different. True, the policies in question were committed to writing at the home offices of the plaintiff companies in foreign States and were to be paid by checks mailed therefrom. But the policies were issued upon the lives of residents of this State and were delivered within its borders by corporations doing business therein. " Effectiveness of a policy [as the complaint says] usually depends upon its being ' delivered and the first premium paid during the lifetime and good health of the insured ', a provision which is usually contained in the policies or in the applications for insurance, copies of which are attached to policies when issued and made a part thereof." Thus the State of New York — where the policies were delivered and where presumably the first premiums were paid — was the place where the contracts in question were made. (*Northwestern Mutual Life Ins. Co.* v. *McCue*, 223 U. S. 234; *U. S. Mortgage & Trust Co.* v. *Ruggles*, 258 N. Y. 32, 38; Restatement, Conflict of Laws, § 318.) On the whole, then, it makes no difference where the policies were signed or where payment thereof was to be initiated. For the core of the debtor obligations of the plaintiff companies was created through acts done in this State under the protection of its laws, and the ties thereby established between the companies and the State were without more sufficient to validate the jurisdiction here asserted by the Legislature. (See *Curry* v. *McCanless*, 307 U. S. 357; *Hoopeston Canning Co.* v. *Cullen*, 318 U. S. 313; *International Shoe Co.* v. *State of Washington*, 326 U. S. 310. Cf. *Prudential Ins. Co.* v. *Benjamin*, 328 U. S. 408; *Harris* v. *Balk*, 198 U. S. 215; *Morris Plan Ind. Bank of N. Y.* v. *Gunning*, 295 N. Y. 324; *Feinman* v. *Marks*, 294 N. Y. 367.)

The contention that the statute unwarrantably rescinds contractual conditions precedent such as the requirements of surrender of policies and filing of due proof of death or other specified events was rejected by the Special Term on the authority of *Provident Institution for Savings* v. *Malone* (221 U. S. 660) — a case which sustained a statute whereby banks were commanded to pay over unclaimed deposits to a State without production of passbooks as required by agreements of deposit. The cited case is quite in point. Besides, the present statute calls upon the plaintiff companies to surrender moneys to this State only after maturity of the policy obligations and at a time when the State, as the then legal representative of the parties entitled to such payment, may be regarded as making demand therefor in their behalf.

" If the statute is retroactive ", say the plaintiff companies, " it illegally attempts to revive claims barred by the statute of limitation." On its face, the statute appears to have been meant for retrospective application, seeing that it became law on April 23, 1943, but did not take effect until June 1, 1944 (L. 1943, ch. 697 [Vol. 1, pp. 1383 and 1415]), and that the reports of abandoned property called for by section 701 must be made on or before the first day of April " in each year ". Furthermore, the clearly procedural character of the statute is reason enough for giving it a retrospective application (*Shielcrawt* v. *Moffett*, 294 N. Y. 181, 188); and if outlawed claims are to be revived thereby, this will be no offense against the Federal Constitution or the Constitution of this State. (*Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304, 316; *Matter of New York University* [*Moore*], 296 N. Y. 913.)

As has already been indicated, the court at Special Term did not decide whether or not the statute illegally deprives the plaintiff companies of defenses to claims upon their insurance contracts. We see no reason why that issue should go undetermined (cf. *Quaker Oats Co.* v. *City of New York*, 295 N. Y. 527, 538). The plaintiff companies, as we have said, cannot resist payment to the defendant comptroller because of (1) the Statute of Limitations or (2) noncompliance with policy provisions calling for due proof of death or of other designated contingency or (3) failure to surrender a policy. Except for these restrictions, however, the statute (§ 700) leaves **any of**

the plaintiff companies wholly free to set up any complete or partial defense whereby it may establish that no moneys are "held or owing" by it on a particular policy, or that only some fraction of the face amount of the contract is payable thereon. Maybe, as the companies say, they cannot effectually prepare possible defenses without a proof of claim, but inconvenience of that kind does not compel us to nullify the statute. Accordingly paragraph 3 of the judgment of Special Term — which reserved decision on the question whether the statute wrongfully does away with defenses to policies — should be struck out.

The judgments should be modified in accordance with this opinion and, as so modified, affirmed, with costs to the defendant State Comptroller.

LEWIS, CONWAY, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment accordingly.