CONNECTICUT MUTUAL LIFE INSURANCE CO.
ET AL. *v.* MOORE, COMPTROLLER OF THE STATE
OF NEW YORK.

No. 337.   Argued December 19, 1947.—Decided March 29, 1948.

542

*Ganson J. Baldwin* and *Buist Murfee Anderson* argued the cause and filed a brief for appellants.

*Abe Wagman,* Assistant Attorney General of New York, argued the cause for appellee. With him on the brief were *Nathaniel L. Goldstein,* Attorney General, and *Wendell P. Brown,* Solicitor General.

MR. JUSTICE REED delivered the opinion of the Court.

We are asked in this suit to consider the validity of the New York Abandoned Property Law as applied to policies of insurance issued for delivery in New York on the lives of residents of New York by companies incorporated in states other than New York.

Article VII of the Abandoned Property Law, headed "Unclaimed Life Insurance Funds," was enacted in 1943. In 1944 the law was amended so as to cover insurance companies incorporated out of the state.[1] Section 700 states

---

[1] The first statute which included insurance policies as abandoned property was enacted in 1939, ch. 923 of the Laws of 1939. That statute applied only to companies incorporated in New York, but covered all policies issued by such companies. Chapter 602 of the Laws of 1940 amended the statute so as to apply only to policies issued on the lives of residents of New York. Chapter 697 of the Laws of 1943 reenacted the principal features of the earlier statutes as Art. VII, and cc. 497 and 498 (§ 2) of the Laws of 1944 made the statute applicable to foreign insurance companies. Chapter 452 of

that "any moneys held or owing" by life insurance companies in the following three classes of policies issued on the lives of residents of New York shall be deemed abandoned property: (1) matured endowment policies which have been unclaimed for seven years; (2) policies payable on death where the insured, if living, would have attained the limiting age under the mortality table on which the reserves are based (an age varying from 96 to 100), as to which no transaction has occurred for seven years; and (3) policies payable on death in which the insured has died and no claim by the person entitled thereto has been made for seven years.[2]   Other sections

---

the Laws of 1946 amended Art. VII so as to provide that a life insurance company which had paid the proceeds of a policy to the state could subsequently pay a second time to a claimant and acquire the rights of the claimant against the comptroller.

[2] "§ 700. Unclaimed life insurance corporation moneys.

"1. The following unclaimed property held or owing by life insurance corporations shall be deemed abandoned property:

"(a) Any moneys held or owing by any life insurance corporation which shall have remained unclaimed for seven years by the person or persons appearing to be entitled thereto under matured life insurance policies on the endowment plan issued on the lives of residents of this state.

"(b) Any moneys held or owing by any life insurance corporation which are payable under other kinds of life insurance policies issued on the lives of residents of this state where the insured, if living, would, prior to the thirty-first day of December next preceding the report required by section seven hundred one, have attained the limiting age under the mortality table on which the reserves are based, exclusive of

"(i) any policy which has within seven years been assigned, readjusted, kept in force by payment of premium, reinstated or subjected to loan, or

"(ii) any policy with respect to which such corporation has on file written evidence received within seven years that the person or persons apparently entitled to claim thereunder have knowledge thereof.

"(c) Any moneys held or owing by any life insurance corporation due to beneficiaries under policies issued on the lives of residents of

of Art. VII provide that insurance corporations doing business in New York shall make an annual report of abandoned property falling within the definitions of § 700, the lists shall be advertised, and if the abandoned property advertised remains unclaimed, the amounts due and owing shall be paid to the state comptroller so as to be in the care and custody of the state. Art. VII, § 703, Art. XIV, § 1402; State Finance Law § 95. Upon payment to the state, the companies are discharged of any obligation, and any person subsequently setting up a claim must file a claim with the comptroller. A penalty of $100 a day is provided for failure to file the required report. Art. XIV, § 1412.

The present suit was brought by nine insurance companies, incorporated in states other than New York, in the Supreme Court of New York for a declaration of the invalidity of the Abandoned Property Law of New York, as applied to the plaintiffs, and to enjoin the state comptroller and all other persons acting under state authority from taking any steps under the statute. The Supreme Court ruled that the Abandoned Property Law was void in so far as it applied to policies of life insurance issued for delivery outside of New York by foreign life insurance companies. As no appeal from this ruling was taken by the state, it is not before us. The Supreme Court reserved to the appellant insurance companies the right to assert the invalidity of the Abandoned Property Law or any application thereof in so far as such law or state action thereunder sought to deprive them of any defense against any claim under any life insurance policy.

---

this state who have died, which moneys shall have remained unclaimed by the person or persons entitled thereto for seven years.

"2. Any such abandoned property held or owing by a life insurance corporation to which the right to receive the same is established to the satisfaction of such corporation shall cease to be deemed abandoned."

With the above exceptions, the Supreme Court upheld the life insurance sections of the Abandoned Property Law against appellants' attack. The Appellate Division affirmed and the Court of Appeals reversed the judgment of the Supreme Court in so far as it reserved to the companies further right to assert defense against claims under the policies. The Court of Appeals by its interpretation of the New York statute left open to the insurance companies all defenses except the statute of limitations, noncompliance with policy provisions calling for proof of death or of other designated contingency and failure to surrender a policy on making a claim. 297 N. Y. 1, 74 N. E. 2d 24. With this modification, it affirmed the trial court's judgment.[3] Appeal to this Court was perfected under § 237 (a) of the Judicial Code and probable jurisdiction noted on October 20, 1947.

In addition to objections under New York law, appellants raised in their complaint and have consistently maintained that the statute impairs the obligation of contract within the meaning of Art. I, § 10, of the Constitution and deprives them of their property without due process of law under the Fourteenth Amendment. Their argument under the Contract Clause is that the statute transforms into a liquidated obligation an obligation which was previously only conditional. Their argument under the Due Process Clause is that New York has no power to sequester funds of these life insurance companies to meet the companies' obligations on insurance policies issued on New York residents for delivery in New York.

I. In support of their first contention appellants note that the policy terms provide that the insurer shall be under no obligation until proof of death or other con-

---

[3] 187 Misc. 1004, 65 N. Y. S. 2d 143; 271 App. Div. 1002, 69 N. Y. S. 2d 323; 297 N. Y. 1, 74 N. E. 2d 24.

tingency is submitted and the policy surrendered. They contend that in dispensing with these conditions the statute transforms an obligation which is merely conditional into one that is liquidated. They further claim that unless proof of death or other contingency is submitted, they will have difficulty in establishing other complete or partial defenses, such as the fact that the insured understated his age in his application for insurance, that the insured died as a result of suicide, military service, or aviation, and that the insured was not living and in good health when the policy was delivered. We assume that appellants may find it more difficult to establish other defenses, but we do not regard the statute as unconstitutional because of these enforced variations from the policy provisions.

Unless the state is allowed to take possession of sums in the hands of the companies classified by § 700 as abandoned, the insurance companies would retain moneys contracted to be paid on condition and which normally they would have been required to pay. We think that the classification of abandoned property established by the statute describes property that may fairly be said to be abandoned property and subject to the care and custody of the state and ultimately to escheat. The fact that claimants against the companies would under the policies be required to comply with certain policy conditions does not affect our conclusion. The state may more properly be custodian and beneficiary of abandoned property than any person.

We think that the state has the same power to seize abandoned life insurance moneys as abandoned bank deposits, *Anderson National Bank* v. *Luckett,* 321 U. S. 233; *Security Bank* v. *California,* 263 U. S. 282, and abandoned deposits in a court registry, *United States* v. *Klein,* 303 U. S. 276. There are, of course, differences between the steps a depositor must take to withdraw a

bank deposit and those that a beneficiary of a policy must take to collect his insurance. Each, however, must make appropriate representations according to the requirements of his contract with bank or insurance company. When the state undertakes the protection of abandoned claims, it would be beyond a reasonable requirement to compel the state to comply with conditions that may be quite proper as between the contracting parties. The state is acting as a conservator, not as a party to a contract. Abandoned Property Law, Art. XIV, § 1404; State Finance Law, § 95; *Anderson National Bank* v. *Luckett, supra,* at 241.

We see no constitutional reason why a state may not proceed administratively, as here, to take over the care of abandoned property rather than adopt a plan through judicial process as in *Security Bank* v. *California, supra.* There is ample provision for notice to beneficiaries and for administrative and judicial hearing of their claims and payment of same.[4] There is no possible injury to any beneficiary. The right of appropriation by the state of abandoned property has existed for centuries in the common law. See *Anderson National Bank* v. *Luckett,*

---

[4] Abandoned Property Law, Art. XIV, § 1404:

"1. The care and custody, subject only to the duty of conversion prescribed in section fourteen hundred two of this chapter, of all abandoned property heretofore paid to the state, except

"(i) abandoned property in individual amounts of less than one dollar so paid pursuant to chapter one hundred seven of the laws of nineteen hundred forty-two; and of all abandoned property paid to the state comptroller pursuant to this chapter, is hereby assumed for the benefit of those entitled to receive the same, and the state shall hold itself responsible for the payment of all claims established thereto pursuant to law, less any lawful deductions, which cannot be paid from the abandoned property fund."

. . . . .

See also §§ 702, 1402, 1406 (1) (a) and (b), and *Anderson National Bank* v. *Luckett, supra,* at 242.

*supra,* at 240 and 251. We find no reason for invalidating the statutory plan under the Contract Clause.

II. Nor do we agree with appellants' argument that New York lacks constitutional power to take over unclaimed moneys due to its residents on policies issued for delivery in the state by life insurance corporations chartered outside the state. The appellants claim that only the state of incorporation could take these abandoned moneys. They say that only one state may take custody of a debt.[5] The statutory reference to "any moneys held or owing" does not refer to any specific assets of an insurance company, but simply to the obligation of the life insurance company to pay. The problem of what another state than New York may do is not before us. That question is not passed upon. To prevail appellee need only show, as he does as to policies on residents issued for delivery in New York, that there may be abandoned moneys, over which New York has power, in the hands of appellants. The question is whether the State of New York has sufficient contacts with the transactions here in question to justify the exertion of the power to seize abandoned moneys due to its residents. Appellants urge that the following considerations should be determinative in choosing the state of incorporation as the state for conservation of abandoned indebtedness, if such moneys are to be taken from the possession of the corporations. It is pointed out that the present residence of missing policyholders is unknown; that with our shifting population residence is a changeable factor; that as the insured chose a foreign corporation as his insurer, his choice should be respected; that moneys should escheat to the sovereignty that guards them at the time of abandonment. As a practical matter, it is urged that restricting escheat or conservancy to the state of

---

[5] Compare *State Tax Commission* v. *Aldrich,* 316 U. S. 174; *Northwest Airlines* v. *Minnesota,* 322 U. S. 292, 293, 294.

incorporation avoids conflicts of jurisdiction between states as to the location of abandoned property and simplifies the corporations' reports by limiting them to one state with one law. Attention is called to presently enacted statutes in Pennsylvania,[6] New Jersey,[7] and Massachusetts.[8] None of these statutes apply to corporations chartered outside of the respective states. Furthermore, it is argued that the analogous bank deposit cases have upheld escheat or conservancy by the state of the bank's incorporation.[9] Finally reliance is placed on the undisputed fact that the policies are payable at the out-of-state main offices of the corporations, the evidences of their intangible assets are there located and there claims must be made and other transactions carried on.

These are reasons which have no doubt been weighed in legislative consideration. We are here dealing with a matter of constitutional power. Power to demand the care and custody of the moneys due these beneficiaries is claimed by New York, under Art. VII of the Abandoned Property Law as construed by its courts, only where the policies were issued for delivery in New York upon the lives of persons then resident in New York. We sustain the constitutional validity of the provisions as thus interpreted with these exceptions. We do not pass upon the validity in instances where insured persons, after delivery, cease to be residents of New York or where the beneficiary is not a resident of New York at maturity of the policy. As interests of other possible parties not represented here may be affected by our conclusions and

---

[6] Purdon's Pa. Stat., Title 27, §§ 434–437.

[7] N. J. Rev. Stat. §§ 17:34–49—34–58 (Cum. Supp., Laws of 1945–1947).

[8] Ch. 455, Mass. Acts and Resolves (1946).

[9] See *Anderson National Bank* v. *Luckett, supra; Security Bank* v. *California, supra; In re Rapoport's Estate,* 317 Mich. 291, 26 N. W. 2d 777.

as no specific instances of those types appear in the record, we reserve any conclusion as to New York's power in such situations. The appellants sought a declaration pursuant to New York procedure of the invalidity of Art. VII of the New York Abandoned Property Law, directed at unclaimed life insurance funds. The Court of Appeals refused to accept appellants' arguments for invalidation of the law on federal constitutional or any other grounds. This decision compelled the appellants to comply with Art. VII, except as their defenses were saved by the opinion of the Court of Appeals, unless this Court reviewed the federal constitutional issues and decided them in appellants' favor. Consequently a case or controversy arising from a statute interpreted by the state court is here with precise federal constitutional questions as to policies issued for delivery in New York upon the lives of persons then resident therein where the insured continues to be a resident and the beneficiary is a resident at the maturity of the policy. A judgment on that class of policies should be reviewed by this Court. *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249, 259; *Nashville, C. & St. L. R. Co.* v. *Walters,* 294 U. S. 405. See *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450, 459–63. We pass only upon New York's power to take over the care of abandoned moneys under those circumstances.

There have been, over the years, a close supervision and regulation by states of the business of insuring the lives of their citizens. There has been complete recognition of this relationship. See *Prudential Insurance Co.* v. *Benjamin,* 328 U. S. 408.[10] New York has practiced such regulation.[11] Foreign corporations must obtain state authority to do business, segregate securities, submit to

---

[10] An old provision makes New York law applicable to policies issued for delivery in New York. Insurance Law § 143 (2).

[11] New York Insurance Law, §§ 42, 59, 103, 143, 208 (5), 216 (6).

examination and state process. The business activities connected with the purchase of insurance by New York residents normally take place in New York. It is the beneficiary of the policy, not the insurer, who has abandoned the moneys. Undoubtedly the relationship is very close.[12] Certainly the relationship between New York and foreign insurance companies as to policies here under discussion is as close as that between the company and its state of incorporation.[13] The Court of Appeals on this point said:

> "For the core of the debtor obligations of the plaintiff companies was created through acts done in this State under the protection of its laws, and the ties thereby established between the companies and the State were without more sufficient to validate the jurisdiction here asserted by the Legislature."

We agree with this statement and hold that New York had power to take over these abandoned moneys in the hands of appellants.

The judgment of the Court of Appeals of New York is affirmed except as to issues specifically reserved.

MR. JUSTICE FRANKFURTER, dissenting.

My brother JACKSON's opinion, with which I substantially agree, persuades me that we should decline to exercise jurisdiction in this case. The wise practice govern-

---

[12] See *Greenough* v. *Tax Assessors,* 331 U. S. 486; *Curry* v. *McCanless,* 307 U. S. 357. Compare *International Shoe Co.* v. *Washington,* 326 U. S. 310, 320: "It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there."

[13] See *New England Mutual Life Insurance Co.* v. *Woodworth,* 111 U. S. 138; *Ex parte Schollenberger,* 96 U. S. 369, 377; *Morgan* v. *Mutual Benefit Life Insurance Co.,* 189 N. Y. 447, 82 N. E. 438.

ing constitutional adjudication requires it. For this proceeding poses merely hypothetical questions, all of which are intertwined and concern interests not represented before us. Circumstances not more compelling, surely, than this record discloses led us in a series of recent cases to avoid borrowing trouble by declining to adjudicate premature constitutional issues. *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450; *United Public Workers of America* v. *Mitchell,* 330 U. S. 75; *Rescue Army* v. *Municipal Court,* 331 U. S. 549.

In appearance this is a suit between a few insurance companies and the State of New York. But at the heart of the controversy are the conflicting claims of several States in a hotchpot of undifferentiated obligations. The proceeds of "abandoned" life insurance policies cannot, I assume, be seized as for escheat more than once. Since the rights and liabilities growing out of such policies are, to a vast extent, the result of a process that concerns two or more States, their interests may come into conflict when, in exigent search for revenue, they invoke the opportunities of escheat against unclaimed proceeds from insurance policies. I assume merely conflicting State interests and lay aside considerations that may be drawn from the decision in *United States* v. *South-Eastern Underwriters Association,* 322 U. S. 533.

In the vigilant search for new sources of revenue, several States have already sought to tap for their own exchequers the matured obligations of unclaimed policies. It would be impractical not to assume that other States will do likewise. Only New York's claim is before us. It is vital to define the precise nature of this claim. New York does not lay claim to a particular fund constituting the proceeds of abandoned matured obligations. This litigation, it is conceded, seeks ·to test abstractly the constitutionality of the New York statute providing for turning over to her the avails of abandoned matured

insurance policies. New York asks that her right to the hotchpot of undifferentiated obligations be acknowledged. Of course New York may enable its courts to pass on the validity of a comprehensive statute unrelated to the enforcement of specific claims to specific funds that came into existence under circumstances differing in their constitutional significance. It does not follow, however, that what the New York Court of Appeals has adjudicated we must review.

The New York Court of Appeals sustained the power of New York to claim escheat on abandoned insurance maturities from foreign insurance companies doing business in New York on the basis of the insured's residence in New York at the time of the delivery of the policy in New York. According to this view, as Mr. Justice Jackson points out, change of residence of the insured or of the beneficiary long before maturity of the policy, or nonresidence in New York of a beneficiary, other than the insured, at any time, become utterly immaterial. These are only some of the familiar situations that are encompassed by the Court of Appeals validation of the New York statute.

This Court does not purport to affirm all that is included in the New York judgment. It is fair, however, to say that the Court's opinion does not enumerate what possible situations included in the judgment below it has not passed upon. It is explicit in putting to one side the validity of the New York statute in "instances where insured persons, after delivery, cease to be residents of New York or where the beneficiary is not a resident of New York at maturity of the policy. As interests of other possible parties not represented here may be affected by our conclusions and as no specific instances of those types appear in the record, we reserve any conclusion as to New York's power in such situations." But "no specific instances" of any type appear

in the record. Indeed, it may be said that the only instances of types of transactions as to which escheat is claimed that are in the record are the types on which the opinion of the Court declines to pass. The complaint specifically refers to the frequency with which policies are issued upon the lives of New York residents for non-New York beneficiaries, as well as the extent with which holders of policies change their residence. On the state of the pleadings, these allegations must be accepted as true. To be sure, New York lays claim to all funds reflecting these situations, and its highest court has sustained this generalized claim. But, as already indicated, this is not a suit for any specific fund. For all we know there are no funds in New York to which that State could lay claim even within the circumscribed affirmance by this Court of the New York judgment.

Whatever the scope of the Court's decision, it is a hypothetical decision. New York has been sustained below in an abstract assertion of authority against funds not claimed nor defined, except compendiously defined as the right to go against insurance companies doing business in New York for the proceeds of policies delivered in New York upon the lives of insured then resident in New York. This generalized decision the Court rejects. Instead, it carves out different and limited claims for which New York may go without any indication that there is anything on which such claims could feed. In any event, such a mutilated affirmance of the decision of the New York Court of Appeals, with everything else left open, is bound to hatch a brood of future litigation. Claims of the States of domicile of the insuring companies, claims of the States of residence of the insured at the time of maturity, claims of the States of residence of beneficiaries other than the insured at the time of maturity, are all put to one side here as not presented by the record though they are as much presented as what is decided. To

revenue-eager States these are practical situations full of potentialities. This Court is all too familiar with the special position of control claimed by a chartering State and the special powers the domiciliary State of a deceased asserts over his "intangibles."

How the conflicting interests of the States should be adjusted calls for proper presentation by the various States of their different claims. Words may seek to restrict a decision purporting to pass on a small fragment of what is in truth an organic complexity to that isolated part. But such an effort to circumscribe what has been decided is self-defeating. A decision has a momentum of its own, and it is nothing new that legal doctrines have the faculty of self-generating extension. We ought not to decide any of these interrelated issues until they are duly pressed here by the affected States, so that a mature judgment upon this interrelation may be reached. All the considerations of preventive adjudication—the avoidance of a truncated decision of indeterminate scope, with the inevitable duty of reconsidering it or unconsciously being influenced by implicit overtones of such a decision—require that decision await the ripening process of a defined contest over particular funds as to which different States make concrete claims.

The way is open to secure a determination by this Court of the rights of the different States in the variant situations presented by abandoned obligations on matured insurance policies. It is precisely for the settlement of such controversies among the several States that the Constitution conferred original jurisdiction upon this Court. If Florida, Massachusetts, New York and Texas could bring here for determination their right to levy a death tax in respect to a particular succession, *Texas* v. *Florida,* 306 U. S. 398, even more fitting is it that the claims of various States to seize the matured obligations of abandoned insurance policies should be presented by

those States at the bar of this Court and be adjudicated here after full reflection on all these claims. Of course the insurance companies have interests to protect and to present. But the essential problem is the legal adjustment of the conflicting interests of different States, because each may have some relation to transactions which give rise to funds that undoubtedly are subject to escheat. Until that is duly before us we should not peck at the problem in an abstract, hypothetical way.

The appeal should be dismissed.

MR. JUSTICE JACKSON, with whom MR. JUSTICE DOUGLAS joins, dissenting.

I find myself unable to join the Court in this case. I cannot agree that we may affirm the judgment below without facing, or by reserving our opinion upon, the constitutional question inherent in this statute by which New York would escheat unclaimed insurance proceeds not located either actually or constructively in New York and which are the property of a beneficiary who may never have been a resident or citizen of New York.

This action is one for a declaratory judgment as to the validity of the Act and we are therefore passing on the Act as an entirety and in the abstract. The cases of nonresident beneficiaries are before us as much as any other concrete case. The Act purports to escheat in every case in which the policy was issued for delivery in New York and the insured was then a resident of that state. The unchallenged complaint alleges the Comptroller's instructions to be that removal of the insured from the state after issuance of the policy does not take a case out of the Act. The statute, as written and as affirmed, obviously intends to reach nonresident claimants and insured persons, for it provides for binding them by publication (§ 702 (2)), and by publication within New York at that. Moreover, and most importantly, in reach-

ing the judgments which we affirm, the opinion of the Special Term of the Supreme Court, while holding some features of the Act invalid, expressly considered and upheld these provisions of the Act and the Court of Appeals indicated no disagreement. Our affirmance necessarily sustains the whole judgment below and that sustains the Act in these particulars. It is perhaps unfortunate to adjudicate constitutionality in such a manner. If we had before us a concrete case, contested by adversary state claimants to the right of escheat and based on a record that would show some facts as to residence of parties to the transactions, we would know better what we are talking about. But since in a declaratory judgment action we can have only hypothetical cases before us, I cannot ignore one which certainly occurs frequently and one embraced within both the Act and the decision below.

Neither the Act nor the decision below contemplates that the right to escheat is based on residence of the owner of the proceeds at the time of escheat, or at any other time, but rather on these two facts: (1) that the policy was issued for delivery in New York, and (2) that the *insured* was then a resident of New York. Thus, the State claims power to escheat what is due a *beneficiary* solely because it was the residence of the *insured* when the policy was issued and irrespective of the nonresidence at that time and at all times of the beneficiary whose property it takes. Thus, the escheat of one man's property is based on another man's one-time residence in the state. Further, the seizure of today is based not even on the assured's residence at the time the policy matured, but on his residence at some prior date, which, in view of the long-term nature of insurance contracts, may have been many years ago.

The effect of the Court's affirmance of the judgment upholding this statute is that a residence by the insured in New York at the time a policy was "issued for deliv-

ery" there shows "sufficient contacts with the transaction," so that the State may escheat proceeds owned by a beneficiary who may never have lived in that State. Even in the abstract, I find the concept of "sufficient contacts with the transaction" too vague to be helpful in defining practical bounds of a state's jurisdiction or power to escheat. We are given no enlightenment as to why any one or more events is regarded as "sufficient," nor as to what jurisprudential context is to be given to the term "contact," which seems taken over from some vernacular other than that of the law. I cannot even tell here what the Court thinks the controlling "transaction" is. If it is issuance of the policy that is the "contacted" transaction, it would seem that the State where it was issued, where premiums were paid, or where it was actually delivered, would be more controlling than the place where it was "issued for delivery." If it is the maturing of the claim, I see less "contact" from a sometime and remote residence than from a later one, or one at the time of events which matured the policy.

The weakness of the Court's test of sufficient contacts with the "transaction" is more fully revealed when we consider that by its application today other states are cut off from escheating the proceeds (unless the company is subject to multiple escheats), although by the same tests they have many more and much closer "contacts" with some part of the transaction. If we say New York may step into the beneficiary's shoes and collect his unclaimed insurance proceeds solely because the insured lived in New York when the policy issued for delivery there, how can we deny the claim of another state to escheat the same fund when its claim is asserted under any one or more of the following circumstances: (1) It is the state in which the insured has died or where some other contingency occurred which brought the claim to maturity. (2) It is

the state in which the beneficiary always has resided and was last known to reside. (3) It is the state of a proved later and longer residence of the insured. (4) It is the state to which both the insured and the beneficiary removed and resided after the policy was taken out in New York. (5) It is the state of actual permanent domicile, as opposed to mere residence in New York, of the insured and the beneficiary. (6) It is the state of actual delivery of the policy, though it was "issued for delivery" in New York. (7) It is the state where the claim is payable and where funds for its discharge are and at all times have been located. Certainly the foregoing are "contacts" as I would understand the term, and some of them or some combination of them seem more persuasive of a right to escheat than the grounds on which we are affirming New York's right to do so.

I am not unmindful of the Court's pronouncement that it does not decide what a state other than New York may do and that it excepts from its approval "instances where insured persons, after delivery, cease to be residents of New York or where the beneficiary is not a resident of New York at maturity of the policy." As to those cases, the Court says it reserves any conclusion. But how can it reserve a conclusion as to whether "contacts" here determined to be sufficient in the case of New York will be sufficient in the case of another state? The issue of "sufficiency of contacts" is settled by this decision. The premises that are being applied today lead inescapably to the conclusion that other states have equally good grounds (i. e., "sufficient contacts") to escheat the same claims. Are we going to repudiate our reasoning in this case the first time another state invokes it in conflict with New York, or will we hold the reasoning impeccable and, hence, the company subject to a double or multiple liability to escheat? The effort to remain

uncommitted to any conclusion is self-delusive when it is accompanied, as it is here, by a commitment as to all of the factors which shape the conclusion "reserved."

It seems to me that the constitutional doctrine we are applying here, if we are consistent in its application, leaves us in this dilemma: In sustaining the broad claims of New York, we either cut off similar and perhaps better rights of escheat by other states or we render insurance companies liable to two or more payments of their single liability. If we impale ourselves, and the state and insurance companies along with us, on either horn of this dilemma, I think the fault is in ourselves, not in our Constitution.

For the juridical basis on which escheat has from time to time rested, we need go no farther than the law of New York itself as expounded by Judge Cardozo. Escheat survives only as an "incident of sovereignty," whether the subject of escheat is personal or real estate. *Matter of People (Melrose Ave.)*, 234 N. Y. 48, 136 N. E. 235. But sovereignty by itself means nothing; sovereignty exists in respect of something or over someone. The two usual examples of escheat properly incidents of sovereignty are:

First, sovereignty in the sense of actual dominion over the property escheated. The State on this basis may, of course, take unto itself lands which fail of private owners through want of heirs, and tangible personal property lost or abandoned in the state. The right to appropriate intangible property constructively within the state also has been upheld by this Court on grounds that "the deposits are debtor obligations of the bank, incurred and to be performed in the state where the bank is located, and hence are subject to the state's dominion." *Anderson National Bank* v. *Luckett,* 321 U. S. 233; *Security Bank* v. *California,* 263 U. S. 282. See also *United States* v. *Klein,* 303 U. S. 276. But New York can show neither actual nor

constructive dominion over the property sought now to be escheated. The proceeds to be escheated are held by out-of-the-state insurance companies and by no stretch of imagination are they within New York's dominion. And certainly residence of the insured at the time the policy issued cannot generate constructive possession of either the beneficiary's claim or the actual proceeds at maturity or at the time of abandonment.

Second, sovereignty over the person, as a resident or citizen, will justify the state in stepping into his shoes as claimant of abandoned property. Our federal form of government presupposes a dual allegiance. In addition to a general allegiance to the United States, each person has a particular allegiance to the state of which he is a resident, and hence, under the Fourteenth Amendment, is a citizen. This status, while it lasts, subjects him and what is his to state power. But New York, under this statute, does not rely on this relationship to sustain this escheat. It would step into the shoes of beneficiaries last known to be citizens of other states and even if they were so unfortunate as never to have been in New York State. The State bases its right to seize such a non-resident's assets solely on the fact that the insured was there when the policy issued. But even if the allegiance of the insured would in some circumstances justify escheat of the beneficiaries' payments, how can it do so after the allegiance has long since ceased? The right of a citizen to migrate from one state of the Union to another, *cf.* *Edwards* v. *California,* 314 U. S. 160, carries with it, of necessity, the right of expatriation, a right for which this Nation has always contended. A state cannot fasten its power and will upon a resident so that it adheres to him for life. I have never before heard it denied that one, if he makes his intent sufficiently clear, may by migration bring to an end his allegiance to a state and with it the state's sovereignty over him. But New York's plan re-

quires us to say not only that sovereignty over an insured reaches the property of a third-party beneficiary but that such a consequence follows both parties for life, although the insured may have deliberately acquired a new allegiance and become a citizen of another state, and the beneficiary may never have been in New York.

Consideration of these conventional and established grounds of escheat shows not only that they fail to support the New York statute in this class of cases, but also that they establish a superior right of escheat in other states as an incident of their sovereignty. Of course, the two grounds I have mentioned may bring two states into conflict. Indeed, such a conflict now exists. Pennsylvania, apparently relying on the theory of the bank deposit cases, undertakes to escheat all unclaimed funds in the hands of companies it has chartered, even though the insured may have been a resident of New York when the policy issued, so that New York would claim the same fund. Can we now say New York may take, without saying Pennsylvania must give? Do we say the company must pay twice? This makes pertinent the question whether we should not decline to decide such issues as are here involved when they are presented only in the abstract by a declaratory judgment action. See *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450, 461.

But if we are to entertain the case, I think we should decide it, not by extemporized generalities like "sufficient contacts with the transaction," but by recognized standards having definite connotations in the law. New York is not the only state with an interest in these questions. New York is merely the sole state whose argument we have heard. The mobility of our population and the complexity of our life create many confusions in which the states may properly look to us for some standard by which they may know what and whom to claim for their

own. It seems to me that we should not unnecessarily confound what at best is confusion, by removing the landmarks of state jurisdiction erected by years of trial and error. *Cf.* dissenting or concurring opinion in *Duckworth* v. *Arkansas,* 314 U. S. 390; *State Tax Commission* v. *Aldrich,* 316 U. S. 174; *Williams* v. *North Carolina,* 317 U. S. 287; *General Trading Company* v. *State Tax Commission,* 322 U. S. 335; *International Harvester Co.* v. *Wisconsin,* 322 U. S. 435; *Northwest Airlines* v. *Minnesota,* 322 U. S. 292; *Greenough* v. *Tax Assessors,* 331 U. S. 486; *Bob-Lo Excursion Co.* v. *Michigan,* 333 U. S. 28; and others, probably, yet to come.

While we may evade it for a time, the competition and conflict between states for "escheats" will force us to some lawyerlike definition of state power over this subject. It is naive beyond even requirements of the judicial office to assume that this lately manifest concern of the states over abandoned insurance proceeds reflects only solicitude for the unknown claimants. If it did, the states' claims might reconcile more easily. But escheat of these interests is a newly exploited, if not newly discovered, source of state revenue. Escheat, of course, is not to be denied on constitutional grounds merely because the motive of the states savors more of the publican than of the guardian. But it is relevant to the caution and precision we should use in sustaining one state's claim, lest we be foreclosing other better-founded ones.

This competition and conflict between states already require us, in all fairness to them, to define the basis on which a state may escheat. The first Act of this kind was by Pennsylvania in 1937. Act of June 25, 1937, Pamphlet Laws 2063, Purdon's Pa. Stat., Title 27, § 434. It is also alleged, and not denied, that two other states have enacted similar laws which are now in force. The Pennsylvania statute "escheats," as the Court says, only proceeds of policies issued by companies incorporated in

Pennsylvania. But it escheats all of those regardless of residence of the insured or of where the policy was delivered. Its conflict with the law before us is patent and immediate. We cannot sustain New York's statute without, to the extent here indicated, striking down that of Pennsylvania, which is not a party here and whose claims have not been heard. The original New York statute, ch. 923, Laws of 1939, was similar to the Pennsylvania Act. It was attacked as unconstitutional, *New York Life Ins. Co.* v. *Pink,* New York Law Journal, Dec. 21, 1939, p. 2257, but was amended to apply only to policies issued by New York companies on the lives of residents of New York. Ch. 602, Laws of 1940. In 1943 these Acts were removed from the Insurance Law, re-enacted as part of the Abandoned Property Law. Ch. 697, Laws of 1943. In 1944 these present statutes were enacted, extending to foreign insurance companies and on the basis here in question. Chs. 497, 498, Laws of 1944. Thus, it represents a deliberate state plan of escheat based only on issuance, for delivery in New York, of a policy insuring the life of a then New York resident, and irrespective of location of the insurer or residence of the beneficiary.

For the reasons outlined herein, I should express disapproval of the declaratory judgment below, decline to certify the validity of this legislation at this time, and deal with this problem only as presented by concrete cases or controversies involving particular funds and facts. But if we are to render a decision in the abstract, I should say that New York by this statute overreaches its sister states by the tests I have set forth.