Total Asset Recovery Servs. LLC v Metlife, Inc. (2020 NY Slip Op 07480)





Total Asset Recovery Servs. LLC v Metlife, Inc.


2020 NY Slip Op 07480


Decided on December 10, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 10, 2020

Before: Friedman, J.P., Kapnick, Webber, Singh, JJ. 


Index No. 115336/10 Appeal No. 12589-12589A Case No. 2019-3806, 2019-3807 

[*1]Total Asset Recovery Services LLC,on Behalf of the State of New York, Plaintiff/Relator-Appellant,
v
Metlife, Inc., and its Subsidiaries and Affiliates, et al., Defendants-Respondents, Brighthouse Financial, Inc., and its subsidiaries and affiliates, et al., Defendants. State of New York, Nonparty Respondent.


The Ferraro Law Firm, P.A., New York (James L. Ferraro of counsel), for appellant.
Sidley Austin LLP, New York (Ellen M. Dunn of counsel) and Sidley Austin, LLP, San Francisco, CA (Carol Lynn Thompson, of the bar of the State of California, admitted pro hac vice, of counsel), for Metlife, Inc., Metropolitan Life Insurance Company, New York Life Insurance Company and New York Life Insurance and Annuity Corporation, respondents.
Debevoise & Plimpton, LLP, New York (Maeve L. O'Connor of counsel), for Prudential Financial, Inc., The Prudential Insurance Company of America, Prudential Insurance Agency, LLC, AXA Financial, Inc., AXA Equitable Financial Services, LLC, AXA Equitable Life Insurance Company, The Guardian Life Insurance Company of America, The Guardian Insurance & Annuity Company, Inc., Manufacturers Life Insurance Company, John Hancock Life Insurance Company (U.S.A.), John Hancock Life Insurance Company of New York, John Hancock Life & Health Insurance Company, Massachusetts Mutual Life Insurance Company, Teachers Insurance and Annuity Association of America and TIAA-CREF Life Insurance Company, respondents.
Dentons US LLP, New York (Stephen G. Della Fera of counsel), for Genworth Financial, Inc., and Genworth Life Insurance Company of New York, respondents.



Judgment, Supreme Court, New York County (Andrea Masley, J.), entered April 19, 2019, dismissing the complaint, and bringing up for review an order, same court and Justice, entered on or about April 3, 2019, which, to the extent appealed from, granted defendants-respondents' motions to dismiss the second amended complaint, unanimously reversed, on the law, with costs, the judgment vacated, and plaintiff granted leave to file a third amended complaint and replead its cause of action pursuant to the New York False Claims Act (State Finance Law art XIII) to the extent not time-barred. Appeal from aforesaid order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Abandoned Property Law article VII requires the proceeds of life insurance policies that have been unclaimed for three years to be escheated to the State. A prior version of this statute was previously held to be constitutional in Connecticut Mut. Life Ins. Co. v Moore (187 Misc 1004 [Sup Ct, NY County 1946], affd 271 App Div 1002 [1st Dept 1947], mod 297 NY 1 [1947], affd 333 US 541 [1948]). At each level of review, the Courts in that case rejected the argument, raised by defendants life insurers herein, that life insurers had no duty to escheat unclaimed life insurance proceeds in the absence of proof of death of the insured (see 187 Misc at 1021; 297 NY at 10; 333 US at 546-547).
In the early 2010s, the State undertook to investigate the manner in which life insurers tracked policyholders and found that life insurers were not adequately verifying whether their policyholders had died in the absence of a claim from a beneficiary. The investigation allegedly resulted in nationwide payments by life insurers of over $250 million, including almost $100 million to New Yorkers. This investigation was followed by the promulgation of regulations requiring life insurers to take certain measures to identify deceased policy holders (see Department of Insurance Regulations [11 NYCRR] part 226) as well as statutory amendments to achieve that goal (see L 2013, ch 10; L 2012, ch 495).
Plaintiff commenced this qui tam action on or about November 23, 2010 and named MetLife, Prudential, and AXA as defendants. It amended the complaint on October 13, 2011 to add Genworth, Guardian, John Hancock, MassMutual, NY Life, and TIAA as defendants. Plaintiff then amended the complaint a second time on or about November 16, 2017. The second amended complaint alleges that plaintiff worked with the State during the above-mentioned investigation and found evidence that defendants failed to escheat to the state unclaimed life insurance proceeds. Such evidence included the escheatment of certain demutualization payments, but not the life insurance proceeds themselves; data deficiencies that prevented defendants from identifying their policyholders, such as missing or incorrect names, dates of birth, or Social Security numbers; and returned mail and customer service call logs indicating that [*2]the insured had passed away. Accordingly, plaintiff asserts a single cause of action, pursuant to the New York False Claims Act (NYFCA), alleging that, from on or about April 1, 1986 and continuing through on or about September 10, 2017, defendants knowingly made, used, or caused to be made or used a false record or statement to avoid complying with their escheatment obligations under the Abandoned Property Law (State Finance Law § 189[1][g]).
Defendants moved to dismiss, arguing, among other things, that their putative failure to report abandoned property could not serve as a basis for a NYFCA claim because they had no duty to escheat unclaimed life insurance proceeds in the absence of notice and proof of death; that plaintiff failed to plead defendants' knowledge of the purported fraud on the State; that plaintiff did not plead its NYFCA claim with sufficient particularity; and that those of plaintiff's claims which relate to reports filed and abandoned property due more than 10 years before the commencement of the action are barred by NYFCA's 10-year statute of limitations. Supreme Court agreed with defendants' arguments, granted their motions, and subsequently entered judgment dismissing the complaint.
"NYFCA applies to any person who 'knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government'" (Anonymous v Anonymous, 165 AD3d 19, 27 [1st Dept 2018], quoting State Finance Law § 189[1][g]). "While the typical NYFCA claim involves the State paying out money on account of a false claim, a 'reverse false claim' occurs when someone uses a false record to conceal or avoid an obligation to pay the government" (Anonymous, 165 AD3d at 27) "To allege a reverse false claim, a plaintiff must state facts tending to show: (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the government; (2) that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the state suffered damages as a result" (State of New York ex rel. Seiden v Utica First Ins. Co., 96 AD3d 67, 71-72 [1st Dept 2012], lv denied 19 NY3d 810 [2012] [internal quotation marks and brackets omitted]). Stated differently, "[a] defendant knowingly makes a false claim under the NYFCA if the defendant had 'actual knowledge' of the falsity of the claim or acted 'in deliberate ignorance' or 'reckless disregard' of its truth or falsity" (Anonymous at 27, quoting State Finance Law § 188[3][a]). Although a reverse false claim must be stated with particularity, "the qui tam plaintiff [is not] required to identify specific claims that result from an alleged course of misconduct, or any specific records or statements used, if the facts alleged in the complaint, if ultimately proven true, would provide a reasonable indication that one or more violations of [[*3]NYFCA] are likely to have occurred, and if the allegations in the pleading provide adequate notice of the specific nature of the alleged misconduct to permit the state . . . effectively to investigate and defendants fairly to defend the allegations made" (State Finance Law § 192[1-a]).
First, contrary to Supreme Court's holding, Moore clearly recognized that the Abandoned Property Law requires life insurers to escheat unclaimed life insurance proceeds even in the absence of notice and proof of death. The statutory amendments and regulatory promulgations within the past decade merely prescribed the manner in which life insurers must go about determining whether their policyholders are still living, such as by comparing their information against the Social Security Administration's Death Master File. Thus, if a life insurer files a false report with the State certifying that it has no abandoned property, within the meaning of Abandoned Property Law § 700, to escheat in a given year, and has the requisite level knowledge, within the meaning of State Finance Law § 188(3)(a), as to the falsity of that report, then the filing of that false report may properly serve as the basis for a NYFCA claim, even if the life insurer has not been presented with notice and proof of the policyholder's death.
Second, plaintiff adequately alleged that defendants knowingly filed false reports with the State which failed to identify escheatable life insurance proceeds. The complaint alleges that defendants' recordkeeping was so haphazard — such as listing incorrect names, dates of birth, and Social Security numbers, or omitting one or more of those pieces of information altogether — that it amounted to reckless disregard for the truth or falsity of the reports that they submitted to the State (see State Finance Law § 188[3][a][iii]). In other circumstances, according to the complaint, defendants had actual knowledge that a policyholder was deceased, as evidenced by returned mail, customer call service logs, or demutualization payments separately escheated to the State, yet defendants nevertheless failed to disclose or escheat the deceased policyholder's life insurance proceeds to the State (see State Finance Law § 188[3][a][i]). These allegations, if true, demonstrate that defendants "deliberately turn[ed] a blind eye to reporting errors and then attest[ed] that, to [their] knowledge, they d[id] not exist" (United States v United Healthcare Ins. Co., 848 F 3d 1161, 1179 [9th Cir 2016]).
Third, Supreme Court correctly determined that plaintiff failed to plead defendants' purported fraud on the State with the requisite level of specificity. Rather, the complaint asserts, in general terms, that all defendants engaged in all of the alleged conduct, which is insufficiently particular (see Aetna Cas. & Sur. Co. v Merchants Mut. Ins. Co., 84 AD2d 736, 736 [1st Dept 1981]; Abdale v North Shore-Long Is. Jewish Health Sys., Inc., 49 Misc 3d 1027, 1043 [Sup Ct, Queens County 2015[*4]]). However, given the trove of data which plaintiff alleges to have amassed over the past several years, the fact that this is the first time that the complaint's veracity has been tested against dispositive motions (cf. United States ex rel. Grenadyor v Ukranian Vil. Pharm., Inc., 895 F Supp 2d 872, 882 [ND Ill 2012]), and the general principle that leave to amend the pleadings should be freely given (see CPLR 3025[b]), it would not be futile to afford plaintiff a further opportunity to amend the complaint and state, with the necessary level of specificity, which defendants engaged in what conduct that gives rise to liability under NYFCA.
Furthermore, Supreme Court correctly determined that NYFCA's 10-year statute of limitations (see State Finance Law § 192[1]) bars plaintiff's claims relating to allegedly false reports that defendants filed more than 10 years before the commencement of this action. Although Abandoned Property Law § 1400 provides that "[t]he expiration of any period of time specified by law, during which an action or proceeding may be commenced or enforced to secure payment of a claim for money or recovery of property, . . . shall not serve as a defense in any action or proceeding by or on behalf of the statecomptroller to compel . . . the payment or delivery of any abandoned property required by [the Abandoned Property Law]," a NYFCA action is brought "on behalf of the person and the people of the stateof New York or a local government" (State Finance Law § 190[2][a]). This is a difference that cannot be disregarded. Abandoned Property Law § 1412(4) provides that "the comptroller may institute a special proceeding in the supreme court, for a judgment directing payment to him of any sum certified to be payable as abandoned property under [the Abandoned Property Law]." Given that Abandoned Property Law §§ 1400 and 1412 were both enacted at the same time (see L 1943, ch 697), more than 50 years before NYFCA (see L 2007, ch 58, part C, § 39), reading Abandoned Property Law § 1400 as referring to the special proceeding for which Abandoned Property Law § 1412(4) provides is in keeping with the canon of construction that "[a] statute or legislative act is to be construed as a whole" (McKinney's Cons Laws of NY, Book 1, Statutes § 97).
We reject plaintiff's alternative argument that Abandoned Property Law article VII imposes a continuing duty on life insurers to report previously undisclosed but escheatable life insurance proceeds in subsequent annual reports to the State. Rather, the statute imposes penalties on life insurers who fail to timely or accurately report or escheat abandoned life insurance proceeds (see Abandoned Property Law §§ 1412[1]-[2]). Because NYFCA's 10-year statute of limitations starts from, as applicable here, the making, using, or causing to be made or used a false record or statement (State Finance Law § 189[1][g]), it is still the initial allegedly false report that starts the clock on NYFCA's statute of limitations[*5]. This interpretation is consistent with our reading of Abandoned Property Law § 1400 insofar as the Comptroller is not prevented from instituting and maintaining a special proceeding to recover life insurance proceeds that should have been reported and escheated more than 10 years ago.
Accordingly, in amending its complaint, plaintiff must limit itself to those allegedly false claims made by MetLife, Prudential, and AXA no more than 10 years before the filing of the initial complaint and by Genworth, Guardian, John Hancock, MassMutual, NY Life, and TIAA no more than 10 years before the filing of the first amended complaint.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 10, 2020